# NO. 24-919

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

LARISSA BATES on behalf of herself, all others similarly situated, and the
general public,

Appellant,

v.

ABBOTT LABORATORIES,

Appellee.

On Appeal from an Order of the United States District Court for the
Northern District of New York

**APPELLANT'S OPENING BRIEF**

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........................................................ ii

JURISDICTIONAL STATEMENT ...............................................1

ISSUE FOR REVIEW .................................................................1

STATEMENT OF THE CASE......................................................1

FACTS AND PROCEDURAL HISTORY .....................................2

STANDARD OF REVIEW ..........................................................17

SUMMARY OF THE ARGUMENT .............................................18

ARGUMENT .............................................................................19

    I.     BATES STATES PLAUSIBLE GBL CLAIMS................................19

        A.     New York's General Business Law...........................19

        B.     Bates Plausibly Alleges the Elements of Her GBL Claims......20

            1.     Consumer-Oriented Conduct...........................20

            2.     Materially Misleading Conduct......................20

                i.     Meaning...............................................23

                ii.     Materiality .........................................28

                iii.     Falsity ................................................33

                iv.     Disclosure..........................................37

                v.     Omission............................................42

            3.     Injury.....................................................43

    II.     BATES' CHALLENGES ARE NOT PREEMPTED........................44

        A.     The Challenged Claims Are Not Express Nutrient Content Claims....................................................46

        B.     The Challenged Claims Are Not Implied Nutrient Content Claims....................................................46

CONCLUSION ........................................................................56

i

# TABLE OF AUTHORITIES

## Cases

*A.S. Goldman & Co. v. Avitar, Inc.*,
   1998 WL 856112 (S.D.N.Y. Dec. 10, 1998)........................................ 44

*Ackerman v. Coca-Cola Co.*,
   2010 WL 2925955 (E.D.N.Y. July 21, 2010) ............................... 26, 38

*Anderson v. Unilever U.S., Inc.*,
   607 F. Supp. 3d 441 (S.D.N.Y. 2022)........................................ *passim*

*Andrade-Heymsfield v. NextFoods, Inc.*,
   2023 WL 2576770 (S.D. Cal. Mar. 20, 2023)............................... 31, 38

*Andrade-Heymsfield v. NextFoods, Inc.*,
   2023 WL 3880076 (S.D. Cal. June 5, 2023) ..................................... 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 17

*Baron v. Pfizer, Inc.*,
   840 N.Y.S. 2d 445 (N.Y. App. Div. 2007)........................................ 43

*Bates v. Abbott Labs.*,
   --- F. Supp. ----, 2024 WL 1345342 (N.D.N.Y. Mar. 29, 2024)........................ 17

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ......................................................... 21

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) ....................................................... 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 24

*Bell v. Publix Super Mkts., Inc.*,
   982 F.3d 468 (7th Cir. 2020)....................................................... 37, 41

*Brockington v. Dollar Gen. Corp.*,
2023 WL 6317992 (S.D.N.Y. Sept. 28, 2023) ................................................... 22

*Bronson v. Johnson & Johnson, Inc.*,
2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) ................................................... 47

*Bruton v. Gerber Prods. Co.*,
2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ..................................................... 29

*Bustamante v. KIND, LLC*,
100 F.4th 419 (2d Cir. 2024) ........................................................................... 2

*Cline v. TouchTunes Music Corp.*,
211 F. Supp. 3d 628 (S.D.N.Y. 2016) .............................................................. 19

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021) ....................................................... *passim*

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021) ................................................ 20, 27, 39, 41

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
27 F. Supp. 3d 357 (E.D.N.Y. 2014) ................................................................ 44

*DeCoursey v. Murad, LLC*,
673 F. Supp. 3d 194 (N.D.N.Y. 2023) ........................................................ 42, 43

*Dumont v. Reily Foods Co.*,
934 F.3d 35 (1st Cir. 2019) .............................................................................. 37

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................................... 24

*Duran v. Henkel of Am., Inc.*,
450 F. Supp. 3d 337 (S.D.N.Y. 2020) ...................................................... 22, 23, 44

*Eidelman v. Sun Prods. Corp.*,
2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ................................................. 23

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin,*
    733 F.3d 393 (2d Cir. 2013) ................................................ 51

*Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.,*
    753 F. App'x 87 (2d Cir. 2019).......................................... 18

*Ferrari v. Vitamin Shoppe Indus. LLC,*
    70 F.4th 64 (1st Cir. 2023) ................................................ 47

*Fink v. Time Warner Cable,*
    714 F.3d 739 (2d Cir. 2013) ......................................... 17, 18, 21, 22

*Fishon v. Peleton Interactive, Inc.,*
    2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020) ...................... 27

*Gross v. Bare Escentuals Beauty, Inc.,*
    632 F. Supp. 2d 283 (S.D.N.Y. 2008)................................ 55

*Hadley v. Kellogg Sales Co.,*
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................... *passim*

*Hadley v. Kellogg Sales Co.,*
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................ 34

*Hadley v. Kellogg Sales Co.,*
    2019 WL 3804661 (N.D. Cal. Aug. 13, 2019)................... 34

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew
    Bender & Co., Inc.,* 37 N.Y. 3d 169 (2021) ...................... 21

*Hoffmann v. Kashi Sales, LLC,*
    646 F. Supp. 3d 550 (S.D.N.Y. 2022)............................... 22

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
    725 F.3d 65 (2d Cir. 2013) ............................................... 44

*In re Sling Media Slingbox Advert. Litig.,*
    202 F. Supp. 3d 352 (S.D.N.Y. 2016)............................... 28

iv

*Int'l Code Council, Inc. v. UpCodes Inc.*,
  43 F.4th 46 (2d Cir. 2022) ................................................................ 30, 31, 32, 33

*Johnson-Jack v. Health-Ade LLC*,
  587 F. Supp. 3d 957 (N.D. Cal. 2022) ........................................................ 31, 35

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y. 3d 940 (2012) ........................................................................................ 19

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................... 32, 33, 39

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) .................................................................... 34

*Krommenhock v. Post Foods, LLC*,
  2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ................................................. 54

*Kyszenia v. Ricoh USA, Inc.*,
  583 F. Supp. 3d 350 (E.D.N.Y. 2022) ............................................................ 42

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ..................................................................... 18, 26

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
  192 F.3d 337 (2d Cir. 1999) .......................................................................... 55

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ....................................................................... 21

*LeGrand v. Abbott Labs.*,
  655 F. Supp. 3d 871 (N.D. Cal. 2023) ................................................... *passim*

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
  199 F.3d 99 (2d Cir. 1999) ........................................................................... 25

*MacNaughton v. Young Living Essential Oils, LC*,
  67 F.4th 89 (2d Cir. 2023) ..................................................................... *passim*

v

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018) ...................................................... 18, 37, 39

*Marentette v. Abbott Labs., Inc.*,
   886 F.3d 112 (2d Cir. 2018) .............................................................. 44

*Martinez v. Agway Energy Servs., LLC*,
   88 F.4th 401 (2d Cir. 2023) .............................................................. 21

*Mason v. Reed's Inc.*,
   515 F. Supp. 3d 135 (S.D.N.Y. 2021) ........................................... 20, 44

*McCracken v. Verisma Sys., Inc.*,
   91 F.4th 600 (2d Cir. 2024) .............................................................. 21

*McMorrow v. Mondelez Int'l, Inc.*,
   2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ............................... 34, 39

*McMorrow v. Mondelez Int'l, Inc.*,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ....................................... 34

*Milan v. Clif Bar & Co.*,
   340 F.R.D. 591 (N.D. Cal. 2021) ....................................................... 35

*Milan v. Clif Bar & Co.*,
   2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ................................... 34

*N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*,
   850 F.3d 79 (2d Cir. 2017) ............................................................... 51

*New York v. Feldman*,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) ............................................... 20

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017) ............................................................. 21

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) .............................................. 19, 20, 43, 44

vi

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ........................................................................ 20, 42

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) ................................................................. 19

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ................................................................ 41

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995) ................................................................... 20

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ............................................................................ 43

*Smith v. Adidas Am., Inc.*,
    --- F. Supp. 3d ----, 2023 WL 5672576 (N.D.N.Y. 2023) .................... 27

*Song v. Champion Petfoods USA, Inc.*,
    27 F.4th 1339 (8th Cir. 2022) .............................................................. 37

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) ................................................................. 55

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .................................... 42

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021) ................................................. 25

*Vangorden v. Second Round, Ltd. P'ship*,
    897 F.3d 433 (2d Cir. 2018) ................................................................. 17

*Walters v. Vitamin Shoppe Indus., Inc.*,
    701 F. App'x 667 (9th Cir. 2017) ........................................................ 38

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................ *passim*

*Wilson v. Nw. Mut. Ins. Co.*,
  625 F.3d 54 (2d Cir. 2010) ................................................................. 20

*WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*,
  851 F. Supp. 2d 494 (S.D.N.Y. 2011) ................................................ 51

*Yumul v. Smart Balance, Inc.,*,
  733 F. Supp. 3d 1117 (C.D. Cal. 2010) ............................................. 31

**Statutes**

21 U.S.C. § 343(r)(1)(A) .................................................................... 45

21 U.S.C. § 343(r)(2)(A)(i) ................................................................ 49

21 U.S.C. § 343(r)(6)(A) .................................................................... 47

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 1332(d)(2)(A) .................................................................. 1

N.Y. Gen. Bus. L. § 349(a) ...................................................... *passim*

N.Y. Gen. Bus. L. § 350 .......................................................... *passim*

**Regulations**

21 C.F.R. § 101.13(b)(1) .................................................................... 45

21 C.F.R. § 101.13(b)(2) ..................................................... 28, 45, 54

21 C.F.R. § 101.13(b)(2)(i) ................................................. 46, 47, 48

21 C.F.R. § 101.13(b)(2)(ii) .............................................................. 49

21 C.F.R. § 101.13(c) ............................................................... 51, 55

21 C.F.R. § 101.3(a) .......................................................................... 49

21 C.F.R. § 101.3(a)……………………………………………………………..49, 50

21 C.F.R. § 101.65(a)(1) ........................................................... 46, 48, 49

21 C.F.R. § 101.65(d) ...................................................................... 52, 54

21 C.F.R. § 101.65(d)(2)(i)(F) ................................................................ 52

21 C.F.R. § 101.93(f) ............................................................................. 47

## Other Authorities

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1277 (1990)....................................................................................... 44

60 Fed. Reg. 66206 (Dec. 21, 1995) ....................................................... 49

65 Fed. Reg. 1000 (Jan. 6, 2000) ............................................................ 47

87 Fed. Reg. 59168 (Sept. 29, 2022) ........................................... 9, 14, 28

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act, because this class action placed more than $5 million in controversy and at least one class member is a citizen of a State different than Defendant-Appellee Abbott Laboratories. This Court has appellate jurisdiction over this case under 28 U.S.C. § 1291 because this is an appeal from a final order of the district court. The district court's March 29, 2024 Order granting Abbott's motion to dismiss without leave to amend, A148-98 ("Order"),[1] disposed of all claims in the case. The court entered judgment the same day. A199. On April 9, 2024, Plaintiff-Appellant Larissa Bates timely filed a Notice of Appeal. A201.

## ISSUE FOR REVIEW

Whether Bates states claims under N.Y. Gen. Bus. L. ("GBL") §§ 349 and 350 because she plausibly alleges Abbott labels its high-sugar Ensure Nutrition Drinks with materially misleading health and wellness claims.

## STATEMENT OF THE CASE

In this false advertising class action, Bates alleges Abbott's use of health and wellness claims to market high-sugar Ensure beverages is misleading in light of the scientific evidence that consuming sugar-sweetened beverages greatly harms health. This simple case theory has been tested as to the specific claims in this case, albeit

---

[1] "A__" refers to the Joint Appendix.

1

under California's consumer protection statutes, in a sister action in which Bates was originally a co-plaintiff. *See LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 885-99 (N.D. Cal. 2023) (denying Abbott's motion to dismiss); *cf. Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (noting the "substantial overlap between the elements of" consumer protection and false advertising claims under New York and California law). Additionally, there have been numerous Rule 12 decisions finding similar claims viable. On a fresh review, this Court should find Bates adequately pleads her GBL §§ 349 and 350 causes of action and vacate the district court's dismissal of those claims.[2]

## FACTS AND PROCEDURAL HISTORY

Together with California consumer Condalisa LeGrand, Bates initially filed her deceptive acts and false advertising GBL claims against Abbott in the Northern District of California, where they were dismissed for lack of personal jurisdiction. *LeGrand*, 655 F. Supp. 3d at 883-85, 898; *see also* A159, Order at 12 n.4 (acknowledging Bates' dismissal from *LeGrand* and stating "the Court does not find that a decision analyzing a different state's statutes has any power to bind this Court in analyzing New York law"). In March 2023, Bates thus re-filed her claims in the Northern District of New York, where she resides. *See generally* A5-44 (Compl.).

---

[2] To focus this appeal, Bates is not challenging any other aspect of the Order.

Bates alleges "Abbott sells a line of 'nutrition' drinks under the 'Ensure' brand," which "it markets with health and wellness labeling representations such as '#1 Doctor Recommended Brand,' 'Complete, Balanced Nutrition for everyday health,' and drink '2 bottles per day as part of a healthy diet.'" A5, Compl. ¶ 1. Abbott further markets some products "as providing specific benefits, like supporting immune, heart, and digestive health." *Id.* "These and the other representations" Bates challenges "are all designed and intended to convince consumers Ensure Nutrition Drinks are healthy food choices." *Id.*

Abbott's representations, however, "are false and misleading because, although there is a vast body of scientific evidence demonstrating that consuming sugar sweetened beverages harms rather than supports overall health—and immune, heart, and digestive health in particular—Abbott adds up to 22 grams of sugar per serving to the Ensure Nutrition Drinks." A5-6, Compl. ¶ 2. For example, notwithstanding that the American Heart Association "recommends that women and children avoid consuming more than 25 grams of sugar per day and that men avoid consuming more than 38 grams," Abbott "Recommend[s] 2 bottles [of Ensure] per day as part of a healthy diet," which "would result in a consumer drinking 44 grams of added sugar from Ensure alone." A33, Compl. ¶ 103.

Bates challenges labeling claims on six Ensure products. A5, Compl. ¶ 1 n.1; *see also* A8-14, Compl. ¶¶ 12, 16, 21, 27, 31, 34. She alleges their labels display the following misleading health and wellness claims.

<u>Ensure Original Nutrition Shake</u>
(A7-8, Compl. ¶¶ 12-14; A85 (label proof))

- "nutrition shake"

- "Complete, Balanced Nutrition® - for everyday health"

- "#1 Doctor Recommended Brand"

- "Complete, Balanced Nutrition®"[3]



---

[3] This claim appears on the outer packaging of Ensure Original multipacks, which is not in the record.

Ensure Complete Nutrition Shake
(A9-10, Compl. ¶¶ 16-19; A87 (label proof))



- "nutrition shake"

- "COMPLETE"

- "Complete, Balanced Meal Replacement"



- For "Immune," "Digestion" and "Heart" health

- "Complete, Balanced Nutrition®—For— Heart [and] Immune"

- "Complete is Ensure's most advanced Complete, Balanced Nutrition shake"[4]



- "#1 Doctor Recommended Brand"

- "Learn About Ensure Complete's Nutrition and Benefits"

- "Chat Live with a Registered Dietitian About Nutrition"

- "with Nutrients for Immune System Support"

---

[4] This claim appears on the label of each bottle of Ensure Complete, which is not in the record.

Ensure Enlive Advanced Nutrition Shake
(A10-11, Compl. ¶¶ 21-25; A89 (label proof))

• "advanced nutrition shake"

• "All IN ONE . . . Heart[,] Immune[, and] Digestion" support

• "most advanced nutritional product"

• "ALL-IN-ONE blend to support your health"

• "Recommended 2 bottles per day as part of a healthy diet."

• "#1 Doctor Recommended Brand"

• "most advanced nutritional product, designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health"

• "complete, balanced nutrition"[5]



---

[5] This claim appears on the outer packaging of Ensure Enlive multi-packs, which is not in the record, in the following context: "How Ensure Enlive Helps: The only complete, balanced nutrition shake that has the unique ingredient **HMB**, plus 20 grams high quality **protein** for muscle health."

6

## Ensure Compact Therapeutic Nutrition Shake
(A12-13, Compl. ¶¶ 27-29; A91 (label proof))

• "therapeutic nutrition shake"

• "#1 Doctor Recommended Brand"

• "complete, balanced nutrition®"





## Ensure Clear Nutrition Drink
(A13-14, Compl. ¶¶ 31-33 (A93 (label proof))





• "nutrition drink"

• "#1 Doctor Recommended Brand"

<u>Ensure Original Nutrition Powder</u>
(A14-15, Compl. ¶¶ 34-36; A95 (label proof))

• "nutrition powder"

• "Complete, Balanced Nutrition® – for everyday health"

• "#1 Doctor Recommended Brand"

• "Each serving of #1 Dr. Recommended Ensure is a source of complete, balanced nutrition™ including 26 essential vitamins and minerals. Use this convenient mix nutrition powder for supplemental use between or with meals."

 

Abbott is "well aware" consumers "seek out and prefer healthful foods and beverages, and are willing to pay more for, or purchase more often, products marketed and labeled as healthy," and "leverages this knowledge in its marketing strategy for the Ensure Nutrition Drinks . . . ." A7, Compl. ¶¶ 10-11.

Each Ensure product, however, contains added sugar contributing between 16.4% and 40% of its calories. A8-14, Compl. ¶¶ 12, 16, 21, 27, 31, 34. The scientific record is replete with evidence that consumption of excess added sugar, especially in the form of sugar-sweetened beverages, causes a wide variety of maladies. *See* A15-23, Compl. ¶¶ 38-68. For example, sugar-sweetened beverage consumption is

8

associated with increased risk of cardiovascular heart disease and mortality, A15-17, Compl. ¶¶ 39-43; impairs the immune system, A17, Compl. ¶¶ 44-48; harms digestive health, A18-22, Compl. ¶¶ 49-61; and is associated with increased risk of obesity, A22-23, Compl. ¶¶ 62-68. As a result of this evidence, authoritative bodies recommend limiting added sugar, and especially sugar-sweetened beverage consumption. *See* A24-26, Compl. ¶¶ 69-77.

For example, "[t]he FDA recently published a proposed rule 'to update the definition for the implied nutrient content claim "healthy" to be consistent with current nutrition science and Federal dietary guidance,'" concluding that "the scientific evidence supports limiting added sugar to just 5% of calories, or 2.5 grams, in individual foods marketed as healthy due to their nutrient content." A24, Compl. ¶¶ 69-70 (quoting 87 Fed. Reg. 59168, 59168 (Sept. 29, 2022)).[6]

In addition, the 2020-2025 Dietary Guidelines for Americans state that sugar-sweetened beverages "are not necessary in the child or adolescent diet nor are they a component of the USDA Dietary Patterns," and that "[b]everages that contain no

---

[6] Abbott, through its membership in "[a]n industry group named the Healthcare Nutrition Council ('HNC'), "submitted a comment to the FDA in response to" the proposed rule, stating it "understand[s] FDA's intention to establish criteria which aligns with the Dietary Guidelines for Americans' and concedes that '[t]he implication' of the FDA's proposed rule is 'that [oral nutrition] products are unhealthy . . . .'" A126 (quoting Comment from Healthcare Nutrition Council, Comment ID No. FDA-2016-D-2355-1572 (Feb. 16, 2023), at p.1 & n.1, *available at* https://www.regulations.gov/comment/FDA-2016-D-2335-1572).

added sugars should be the primary choice for children and adolescents," while for adults, "[i]ntake of sugar-sweetened beverages should be limited to small amounts and most often replaced with beverage options that contain no added sugars, such as water." A25, Compl. ¶¶ 71-72 (quotation omitted).

Similarly, the World Health Organization, American Heart Association, Heart and Stroke Foundation, Centers for Disease Control and Prevention, and Harvard School of Public Health all recommend substantially limiting consumption of added sugars for good health. *See* A25-26, Compl. ¶¶ 73-77.

"As the scientific evidence demonstrates, Abbott's representations regarding the general healthfulness of the Products, as well as their representations that they are beneficial to immune, digestive, and heart health, are false, or at least highly misleading." A27, Compl. ¶ 79. For example:

> with authoritative governmental and medical bodies . . . recommending limiting added sugar consumption to less than 5% or 10% of daily calories for a healthy diet, and less than 5% of calories for a healthy food, it is misleading for Abbott to claim that its Ensure Nutrition Drinks provide "complete" and "balanced" nutrition when between 16.4% and 40% of their calories come from added sugar.

*Id.*, Compl. ¶ 80.

"Likewise, by calling the Products 'nutrition' drinks, labeling them with additional health and wellness messages . . . and touting them as 'Doctor Recommended,' Abbott conveys that the Products are healthy," but the "scientific evidence convincingly shows that consuming sugar-sweetened beverages like the

10

Products causes serious, negative health consequences." *Id.*, Compl. ¶ 81. And "even if some nutrients in the Ensure Nutrition Drinks are capable of providing some potential health benefit," the challenged claims are deceptive "because regular consumption of the Products is likely to have an overall, net detrimental impact on health for most consumers." *Id.*

In addition, "because sugar-sweetened beverage consumption is associated with increased risk of cardiovascular disease and mortality, Abbott's representations that "Ensure supports "Heart" health are "false or at least highly misleading." *Id.*, Compl. ¶ 82. "Similarly, because sugar-sweetened beverage consumption harms gut microbiota and the gut barrier, Abbott's representations that" Ensure is "beneficial for 'Digestion'" or provides "'All In One Digestion' support are false or at least highly misleading." *Id.* "Likewise, because scientific evidence shows that the consumption of added sugars can [impair immune function], Abbott's representations that" Ensure beverages "provide 'Immunity' or 'Immune' support, are false, or at least highly misleading." *Id.*

Part of the reason "Abbott's health and wellness representations have the capacity, tendency, and likelihood to confuse or confound . . . average consumers acting reasonably" is that "[t]he average consumer is not intimately familiar with the scientific evidence regarding the health effects of consuming added sugar," and "therefore is unaware of the extent to which consuming high amounts of added

11

sugar, like that in the Ensure Nutrition Drinks, detrimentally [a]ffects overall health, or how it harms immune, digestive, and heart health." A27-28, Compl. ¶ 83.

> Because the average consumer is not familiar with the science, he or she would believe that the Products provide the represented benefits notwithstanding their added sugar content, since the average consumer does not know the extent to which consuming the sugar in the Products adversely affects overall health, or how it harms immune, digestive, and heart health.

A28, Compl. ¶ 84. Further, "there is no way for a consumer to know—by simply looking at the label and without reviewing the scientific evidence—whether or not the Products in fact provide the claimed benefits." *Id.*, Compl. ¶ 85.

In particular, "[n]umerous studies demonstrate that the mandatory Nutrition Facts Box is not sufficient to allow consumers to make accurate assessments of the healthfulness of foods and beverages." *Id.*, Compl. ¶ 86; *see also* A28-29, Compl. ¶¶ 87-88 (discussing studies). "In part as a result of low health literacy, it is reasonable for consumers to believe based on Abbott's advertising that the Products provide the claimed benefits, even in light of their added sugar content." A29, Compl. ¶ 89.

"Moreover, aside from the difficulty many consumers have using the nutrition facts panel, deciding if a food or beverage is healthy or unhealthy is a complex process, and . . . most consumers have difficulty accurately assessing the healthfulness of foods and beverages." *Id.*, Compl. ¶ 90. Studies show "[t]his problem is exacerbated when unhealthy products bear health and wellness

representations, as with the Ensure Products." *See* A29, Compl. ¶ 91. For example, "[h]ealth positioning claims . . . have the specific effect of decreasing perceptions of the presence of certain less healthful nutrients." A30, Compl. ¶ 92 (quotation and alterations in original omitted). This means "health-related marketing . . . may mislead consumers to more positively assess the healthfulness of sugar-containing beverages." *Id.* (alteration in original) (quotation omitted). "Abbott does just this with its Ensure Nutrition Drinks." *Id.*, Compl. ¶ 93.

"Abbott also distracts consumers by placing limited nutrition facts information on the front of the labeling which includes calories and protein. By placing this information on the front of the label, which notably omits the amount of sugar, Abbott makes it less likely that consumers will closely examine the nutrition facts." *Id.*, Compl. ¶ 94. "Further, research shows that most ordinary consumers do not actually review the sugar content of products, and even those that do are often unable to accurately determine a product['s] healthfulness." *Id.*, Compl. ¶ 95; *see also* A31, Compl. ¶ 96 (discussing eye-tracking research showing few consumers view sugar information).

"Not surprisingly, both governmental agencies and health professionals," including the Federal Trade Commission, "have noted the misleading nature of Abbott's advertising of the Ensure Nutrition Drinks." *Id.*, Compl. ¶ 97; *see also* A31-32, Compl. ¶¶ 98-101 (detailing criticism). One health professional opined, "[t]his

13

is not that different from eating a bag of candy or drinking soda. Add a vitamin pill and you'll get something very similar." A32, Compl. ¶ 100 (citation omitted).

"Rather than correct the misconception created by its marketing . . . Abbott continues to leverage consumer confusion to increase its profits at the expense of consumers' health," even "recommend[ing] daily consumption of the Ensure Nutrition Drinks, sometimes encouraging multiple drinks per day, and sometimes as a supplement, *i.e.*, in addition to a consumer's regular diet." A32-33, Compl. ¶ 102.

"It is unfair and deceptive for Abbott to 'Recommend 2 bottles per day as part of a healthy diet' when following this recommendation would cause consumers to exceed the daily added sugar intake levels recommended by authoritative health bodies to prevent harm to health." A33, Compl. ¶ 103; *see also id.*, Compl. ¶ 104 ("Abbott's conduct is particularly unfair and deceptive in light of the fact that 'most Americans exceed the recommended intake limit[] for added sugars . . . .'" (quoting 87 Fed. Reg. at 59171)).

"While representing" Ensure is "beneficial to overall health, and immune, digestive, and heart health, Abbott regularly and intentionally omits material information regarding the countervailing detrimental effects of the added sugars on overall health, and immune, digestive, and heart health." *Id.*, Compl. ¶ 105. "Abbott is under a duty to disclose this information to consumers because": (i) "it is revealing some information about the products—enough to suggest they are beneficial—

14

without revealing directly relevant information regarding the harmful effects of added sugar"; (ii) "its deceptive omissions concern human health and safety, specifically the detrimental health consequences of consuming the Products"; (iii) "it was in a superior position to know of the dangers presented by the added sugars in the Products, as it is a large sophisticated company that holds itself out as hav[ing] expert knowledge regarding the impact of consuming the Products"; and (iv) "it actively concealed material facts not known to Plaintiff and the Class concerning the detrimental effects of regularly consuming the Products." *Id.*, Compl. ¶¶ 106-109.

Bates "is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Abbott had about the scientific literature regarding the likely health effects of consuming the Ensure Nutrition Drinks given their added sugar content." A35, Compl. ¶ 118. She purchased Ensure between 2018 and 2022, in reliance on Abbott's labeling claims that Ensure was "a 'Complete' 'nutrition shake' that was a 'Complete, Balanced Meal Replacement,' 'Doctor Recommended,' and supportive of 'Immune,' 'Heart,' and 'Digestive' health." *Id.*, Compl. ¶¶ 116-17. "Based on these label claims and the context of the labels as a whole, Plaintiff reasonably believed that consuming Ensure Complete Nutrition Shakes would provide her with complete, balanced nutrition and would be beneficial rather than detrimental to her health when consumed regularly," but "these claims[] were and are deceptive." *Id.*, Compl. ¶ 117.

15

"At the time of her purchases, Plaintiff was unaware of the extent to which consuming high amounts of added sugar adversely affects health or what amount of added sugar might have such an effect, especially in light of the Products' other nutrients." *Id.*, Compl. ¶ 118. She "acted reasonably in relying on the challenged labeling claims, which Abbott intentionally placed on the Ensure Nutrition Drinks' labeling with the intent to induce average consumers into purchasing the products." *Id.*, Compl. ¶ 119.

Bates "would not have purchased the Ensure Nutrition Drinks if she knew that the challenged labeling claims were false and misleading in that the Ensure Nutrition Drinks are not complete, balanced nutrition, do not provide the specific health benefits promised, and are detrimental rather than beneficial to health." A35-36, Compl. ¶ 120; *see also* A36, Compl. ¶ 124 ("Plaintiff paid more for the Ensure Nutrition Drinks, and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling complained of herein."). Thus, "Plaintiff and the Class lost money as a result of Abbott's deceptive claims, omission, and practices in that they did not receive what they paid for when purchasing the Ensure Nutrition Drinks." A36, Compl. ¶ 127. Bates accordingly asserts claims under GBL §§ 349 and 350, *see* A38-40, Compl. ¶¶ 141-53, on behalf of a class of New York Ensure purchasers, *see* A37, Compl. ¶ 132.

\*            \*            \*

16

In June 2023, Abbott moved to dismiss the Complaint. A2 (Dkt. No. 7). Briefing was complete in July. A4 (Dkt. No. 25). On March 29, 2024, the district court granted Abbott's motion to dismiss in its entirety, without leave to amend. *See* A148-98, Order.[7] Relevant here, it found plaintiff's GBL claims implausible under the reasonable consumer standard, A165-67, Order at 18-20, and held that many statements Bates challenged were both preempted nutrient content claims, A171-79, Order at 24-32, and non-actionable puffery, A169-71, Order at 22-24.

## STANDARD OF REVIEW

This Court reviews the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the Complaint and drawing all reasonable inferences in Appellant's favor, to determine whether they state a plausible claim for relief. *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which occurs where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (*per curiam*) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The standard of facial plausibility

---

[7] Electronically published at *Bates v. Abbott Labs.*, --- F. Supp. ----, 2024 WL 1345342 (N.D.N.Y. Mar. 29, 2024).

applicable depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citation omitted).

## SUMMARY OF THE ARGUMENT

Because the scientific evidence Bates alleges contradicts Abbott's express and implied representations that Ensure Nutrition Drinks are healthy, balanced food choices—and because Abbott omits material information consumers cannot reasonably obtain—it is plausible Abbott's "conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances,'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink*, 714 F.3d at 741). Bates' GBL claims should therefore proceed. *See Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 753 F. App'x 87, 89 (2d Cir. 2019) ("The FTC has stated a plausible claim that Quincy's representations about Prevagen are contradicted by the results of Quincy's clinical trial and are thus materially deceptive in violation of the . . . New York General Business Law." (citations omitted)). Because none of the labeling statements Bates challenges are permitted by the Federal Food, Drug, and Cosmetic Act ("FFDCA") or its implementing regulations, her challenges are not preempted.

18

## **ARGUMENT**

## I.    **BATES STATES PLAUSIBLE GBL CLAIMS**

### A.    **New York's General Business Law**

New York General Business Law section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. L. § 349(a), and section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce," *id.* § 350. "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (quoting *Cline v. TouchTunes Music Corp.*, 211 F. Sup. 3d 628, 635 (S.D.N.Y. 2016)).

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y. 3d 940, 944 (2012)). These claims are "not subject to the pleading-with-particularity requirements of Rule 9(b) . . . but need only meet the bare-bones notice-pleading requirements of Rule 8(a)," *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (internal citations omitted).

### B. Bates Plausibly Alleges the Elements of Her GBL Claims

#### 1. Consumer-Oriented Conduct

"A defendant engages in 'consumer-oriented' activity if [its] actions cause any 'consumer injury or harm to the public interest.'" *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). The requirement "has been construed liberally," *id.*, and "may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995)).

Courts regularly hold that marketing consumer goods constitutes consumer-oriented activity. *See* A161, Order at 14 ("The Court finds that . . . Plaintiff has alleged that Defendant produced a consumer-oriented product"); *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 451 (S.D.N.Y. 2022); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 94 (S.D.N.Y. 2021). This Court should hold Bates satisfies the first element of her GBL claims. *See Orlander*, 802 F.3d at 300.

#### 2. Materially Misleading Conduct

"A defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances."

20

*McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 607 (2d Cir. 2024) (quoting *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y. 3d 169, 178 (2021)); *accord Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 417 (2d Cir. 2023) ("Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (internal quotation marks omitted))).

This is the same objective standard governing claims under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA). *See Fink*, 714 F.3d at 741; *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-29 (9th Cir. 2019) ("[C]laims under the California consumer-protection statutes are governed by the 'reasonable consumer' test," which "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), and quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003))).

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is . . . the advertising itself. And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."

21

*Fink*, 714 F.3d at 742. Therefore, "courts assess 'each allegedly misleading statement in light of its context on the product label or advertisement as a whole,' contemplating the entire mosaic rather than each tile separately," *Hoffmann v. Kashi Sales, LLC*, 646 F. Supp. 3d 550, 558 (S.D.N.Y. 2022) (quoting *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015)).

"While it is possible for a court to decide this question as a matter of law . . . this [reasonable consumer] inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage[.]" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (internal citation omitted) (collecting cases); *accord Williams*, 552 F.3d at 938 ("whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" (citations omitted)); *Brockington v. Dollar Gen. Corp.*, --- F. Supp. 3d ----, ----, 2023 WL 6317992, at *8 (S.D.N.Y. Sept. 28, 2023) ("[W]hether an advertisement would mislead a reasonable customer 'is generally a question of fact not suited for resolution at the motion to dismiss stage.'" (quoting *Duran*, 450 F. Supp. 3d at 346)); *cf. Colpitts*, 527 F. Supp. 3d at 581 ("multiple courts have indicated that such relief should rarely be* granted" (collecting cases)).

This Court should hold Bates plausibly alleges reasonable consumers could be misled by Ensure's challenged labeling claims because she plausibly alleges Abbott conveys an actionable message that Ensure is a healthy food choice providing

specific health benefits; that the message is material; and that the message is false or misleading. That Abbott is required to disclose in the Nutrition Facts Panel Ensure's sugar content does not render Bates' claims implausible either as a matter of law or fact. Finally, Bates independently states GBL claims based on Abbott's omission of material facts that she plausibly alleges she could not reasonably obtain.

### i.    Meaning

"[W]hether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where . . . a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Anderson*, 607 F. Supp. 3d at 452 (quoting *Eidelman v. Sun Prods. Corp.*, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017)). Thus, "dismissal on a Rule 12(b)(6) motion is often not appropriate where doing so would require assessing how a reasonable consumer would respond to particular representations." *Duran*, 450 F. Supp. 3d at 349 (citing *Eidelman*, 2017 WL 4277187, at *4).

Here, Bates plausibly alleges the challenged labeling claims convey a message that Ensure beverages are healthy, balanced food choices notwithstanding their added sugar. *See* A8-15, Compl. ¶¶ 13-14, 17-19, 22-25, 28-29, 32-33, 35-36. That message is express when Abbott markets Ensure Original as "Complete Balanced Nutrition® - for everyday health," or Ensure Advanced Nutrition as a "most advanced nutritional product" because it is "an All-in-One blend to support your

23

health." Similarly, references to "Immune," "Digestive," and "Heart" support are express claims that Ensure provides those specific health benefits. The remaining labeling claims' references to "therapeutic," "complete," and "advanced" "nutrition"—even when not concurrently using the word "health"—convey the same message, especially when each label is considered as a whole.

For example, all Ensure products bear the challenged claim, "#1 Doctor Recommended Brand," which further associates Ensure—and its other marketing claims—with healthfulness, and even medical expertise. Thus, "[t]aking as true that the added sugar content in Ensure Nutrition Drinks makes them harmful to health," it is "reasonable that a consumer could be misled by packaging promoting the products as 'Complete, Balanced Nutrition' and 'for everyday health,' which implies that they help rather than harm consumer health." *LeGrand*, 655 F. Supp. 3d at 891.[8]

Other statements Bates challenges likewise add to the deceptive health message. For example, "Learn about Ensure Complete's Nutrition and Benefits" is "potentially misleading along the same lines as other package references to

---

[8] Because the governing reasonable consumer standard is identical, comity might caution against dismissing claims under the GBL that another federal court held plausibly violate California's UCL, FAL, and CLRA. Relatedly, because *LeGrand* is proceeding through discovery on identical claims, dismissal of Bates' GBL claims does not "serve[] the practical purpose of preventing a . . . '[] largely groundless claim' from 'tak[ing] up the time of a number of other people . . . .'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (last alteration in original) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

'nutrition,' as it implies the product is providing a benefit, rather than a detriment, to nutrition and health." *Id.* at 893. And "Chat Live with a Registered Dietitian about Nutrition" is "potentially misleading in a manner similar to '#1 Doctor Recommended Brand' because it indicates that someone with specialized health expertise promotes the product and thus lends credence to the notion that the product is healthy." *Id.*; *cf. Anderson*, 607 F. Supp. 3d at 454 ("the question before the Court is not whether it is correct (or the result of airtight logical reasoning) to interpret Defendant's representations as to the Product in the manner that Plaintiff alleges, but whether a reasonable consumer *could* interpret Defendant's representations as to the Product in the manner that Plaintiff alleges" (citing *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021))).

Moreover, many consumers are at least vaguely aware the government makes recommendations for a healthy diet, with things like the Food Pyramid, and regulates what can be said on food. Therefore, that the United States Departments of Health and Human Services and Agriculture release, every five years, updated Dietary Guidelines for Americans, based on the recommendations of a scientific committee that issues a report based on the latest nutrition science, *see* A25, Compl. ¶¶ 71-72,[9]

---

[9] The Dietary Guidelines for Americans 2020-2025 (9th ed.) ["2020-2025 DGAs"] is integrated into Bates' Complaint, A25, Compl. ¶ 71 n.50, and may thus be considered in full, *see Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). Its introduction states it "is grounded in robust scientific reviews of the current body of evidence on key nutrition and health topics for each life stage,"

bolsters the plausibility of Bates' allegation that the challenged labeling conveys a health message. While most consumers are not intimately familiar with the nuances of such guidelines, they are more broadly aware that such guidelines are aimed at helping Americans create healthy dietary patterns that balance the need for different nutrients. Against that backdrop, reasonable consumers might well believe—wrongly, *see* A24-26, Compl. ¶¶ 69-77—that because Ensure purportedly provides "complete," "balanced," "advanced," and "therapeutic" "nutrition," it meets authoritative guidelines for healthy, balanced foods. As one New York court explained, "consumers who have some awareness that food product labeling is subject to government regulation (owing in part to the ubiquitousness of the FDA's 'nutrition facts' label on food products) may reasonably be expected to rely on label claims as accurate depictions of a food's contents and nutritional value." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010).

There is also no "obvious" "alternative explanation[]," *see L-7 Designs, Inc.*, 647 F.3d at 430, of what message Abbott's slogan, "Complete, Balanced Nutrition®" sends to consumers, if not a health message. *See Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 3880076, at *2 (S.D. Cal. June 5, 2023) ("Defendant is likely trying to attract health-conscious consumers by suggesting on its label that

---

conducted by "20 distinguished scientists . . . that . . . . culminated in a comprehensive scientific report on the current state of nutrition science . . . ." 2020-2025 DGAs at Page v.

its product (1) is part of a 'good health game plan,' (2) would keep a person's 'good health going,' and (3) would 'renew' a person's digestive health. Otherwise, it is difficult to see the point of such language."); *cf. Smith v. Adidas Am., Inc.*, --- F. Supp. 3d ----, ----, 2023 WL 5672576, at *6 (N.D.N.Y. 2023) ("Plaintiff plausibly alleges that Defendant's representations are objectively misleading" where "[t]here is no 'alternative explanation' of Defendant's description of its 'authentic' jerseys as 'the same one[s] [NHL] players wear when the puck drops' that 'render[s] [P]laintiff's inferences unreasonable.'" (quoting *Colpitts*, 527 F. Supp. 3d at 581)).

Even if there were a plausible alternative way to interpret the challenged claims, that would not justify dismissal where Bates' allegation of how consumers interpret the labels is plausible. *See Colpitts*, 527 F. Supp. 3d at 583 ("[E]ven if a competing inference of the 'Smokehouse®' label is that the almonds merely contain smoky flavor, an equally plausible inference is that the almonds were prepared over actual smoke."); *Cooper*, 553 F. Supp. 3d at 97 ("[A]t the motion-to-dismiss stage, '[w]here a representation is capable of two possible reasonable interpretations,' the Court is not free to reject 'the misleading one . . . simply because there is an alternative, non-misleading interpretation." (alteration in original) (quoting *Fishon v. Peleton Interactive, Inc.*, 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020))).

The district court itself made the health connection Bates alleges when it concluded that many of the challenged statements—including "Complete,"

"Complete, Balanced Meal Replacement," and references to "Immune," "Digestion," and "Heart" health— "'suggest[] that the food, because of its nutrient content, may be useful in maintaining *healthy dietary practices* . . . .'" A177, Order at 30 (emphasis added) (quoting 21 C.F.R. § 101.13(b)(2)). When used in regulations promulgated under the FFDCA, "healthy dietary practices" refers to "achieving a total diet that conforms to current dietary recommendations." *See*, *e.g.*, 87 Fed. Reg. 59168, 59174 (Sept. 29, 2022). Although the district court was wrong in concluding these are preempted implied nutrient content claims, *see infra* pp. 45-56, its making a connection between the statements and a health message reveals the message the labeling sends reasonable consumers.

### ii.    Materiality

Bates also "sufficiently pleads materiality." *See Colpitts*, 527 F. Supp. 3d at 583. "A 'material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Id.* (quoting *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016)). Bates alleges she "would only have been willing to pay less, or unwilling to purchase [Ensure] at all, absent [its] false and misleading labeling," A36, Compl. ¶ 124. She also alleges "consumers seek out and prefer healthful foods and beverages, and are willing to pay more for, or purchase more often, products marketed and labeled as healthy," supporting this with survey

evidence. A7, Compl. ¶ 10. Finally, she alleges "Abbott has marketed the Ensure Nutrition Drinks with labeling representations intended to appeal to consumers interested in health and wellness . . . ." A26, Compl. ¶ 78. *Cf. Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1084 (N.D. Cal. 2017) ["*Hadley I*"] (Koh, J.)[10] ("The fact that the FDA regulates the use of the term 'healthy' implies that 'consumers rely on health-related claims on food products in making purchasing decisions.'" (quoting *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) (Koh, J.))); *Colpitts*, 527 F. Supp. 3d at 584 (plaintiff sufficiently pleaded materiality by alleging "consumers prefer almonds that are prepared from a 'natural production process, i.e., actual smoking,'" that "consumers have those preferences for nutritional and health reasons," and that "these preferences were material in the decision to purchase the almonds, for both Plaintiff and the putative class" (record citation omitted)).

The district court's belief "Complete," "Advanced" and other challenged labeling statements are implied nutrient content claims contradicts its holding that the statements are non-actionable, immaterial puffery. *See* A169-70, Order at 22-23. This Court should reject that inconsistent finding.

There are two types of puffery: "(1) subjective statements that cannot be proven true or false and are therefore non-actionable puffery as a matter of law and

----

[10] The Honorable Lucy H. Koh now sits on the Ninth Circuit Court of Appeals.

(2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (citing *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022)). The first form "often manifests as exaggerations or overstatements that mention nothing specific, but rather amount to general claims of superiority expressed in broad, vague, and commendatory language that are considered to be offered and understood as an expression of the seller's opinion only." *Id.* (alterations and internal quotation marks omitted) (quoting *Int'l Code Council*, 43 F.4th at 59-60). The challenged "Complete, Balanced Nutrition®" and similar statements in this case are neither form of puffery, but instead objective statements that can be proven true or false, which are not so exaggerated as to preclude reasonable consumer reliance.

There can be no genuine dispute—and at the very least, it is certainly plausible at the pleading stage—that "Complete, Balanced Nutrition®" and similar claims suggest to reasonable consumers Ensure beverages are healthy, balanced food choices. Bates alleges this message is provably false. *Cf. Hadley I*, 273 F. Supp. 3d at 1085 (Rejecting argument challenged claims were puffery because "Plaintiff provides an alleged 'method of measuring [ ] healthiness,'" by "alleg[ing] that the quantity of added sugar in Defendant's products causes Defendant's products to be unhealthy, and backs that assertion up with various scientific studies that show the

health effects of added sugar," such that "the meaning of the word 'healthy' or 'health' in this case can be measured against whether or not Defendant's products are found to be unhealthy based on the scientific studies and evidence provided by Plaintiff." (citing and distinguishing *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 3d 1117 (C.D. Cal. 2010))).

Nothing about Ensure's "complete," "balanced," and "advanced nutrition" labeling is so exaggerated as to preclude justifiable consumer reliance. *See MacNaughton*, 67 F.4th at 98 (claims touting benefits of essential oils were "unlike an advertisement representing that a certain gum permits consumers to blow a bubble as big as the moon" (citing *Int'l Code Council*, 43 F.4th at 60-61)). Several courts have rejected assertions that similar labeling claims were puffery. *See Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770, at *4 (S.D. Cal. Mar. 20, 2023) ["*Andrade-Heymsfield* I"] ("the Court cannot determine that the reasonable consumer would not rely on the label as promoting good digestive and overall health"); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 963 (N.D. Cal. 2022) ("[M]any courts in this district have held that [the term 'healthy'] is not puffery because consumers rely on it when purchasing food products."); *Hadley I*, 273 F. Supp. 3d at 1082-85 ("essential nutrients," "nutritious," "wholesome," "healthy," "good for you," "balanced breakfast," "does your heart good," and "Real Fruit / Take Care of You" not puffery).

"Once [a challenged] statement is identified as both provable as false and plausible, a defendant can only prevail on the puffery defense after a fact-intensive inquiry on how a reasonable buyer would react. That inquiry cannot be resolved at the pleadings stage." *MacNaughton*, 67 F.4th at 97 (citing *Int'l Code Council*, 43 F.4th at 61). Thus, in *LeGrand*, the court held it could not determine at the pleading stage that "Complete, Balanced Nutrition®" and its variations, as well as "advanced" and "most advanced," were puffery. 655 F. Supp. 3d at 893-94. It emphasized these statements needed to be viewed in the context of the whole package and found that, in that context, the phrases support an inference that the Ensure products are healthy. *Id.* at 893. Thus it could not say at the pleading stage that the claims were extremely unlikely to induce consumer reliance. *Id.*; *see also Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 965 (N.D. Cal. 2017) ["*Krommenhock I*"] (Post "appear[s] to single out statements as non-actionable puffery when plaintiffs' claim is that those statements combined with others on the same package *together* express or convey the health claim").

In *MacNaughton*, this Court found that "therapeutic-grade" claims on essential oils promising physical, mental, or medicinal benefits were not puffery. 67 F.4th at 97-98. Relying on dictionary definitions, it found "therapeutic"—a term used on one Ensure products here—"represents the item possesses a degree of quality as to produce healing," such that it was "not a subjective or vague term[.]"

*Id.* at 97. It also "considered [the phrase] in context," noting that the defendant "also promised that each Product would produce particular medicinal or physical effects, such as 'promot[ing] a sense of clarity and focus,'" and explaining that "[t]he accuracy of these statements and claims is provable" and "questioned by . . . the studies in [the plaintiff's] First Amended Complaint[.]" *Id.* at 97-98.

Because the labeling claims challenged in *MacNaughton* were both provable as false and "not so patently hyperbolic that it is implausible for a reasonable consumer to be misled," the Court's "holding in *Int'l Code Council* require[d] the statements . . . be subject to a 'fact-intensive inquiry' on how a reasonable buyer would be affected," and "[d]ismissal of the New York General Business Law claims was therefore in error." 67 F.4th at 98 (quotation omitted).

This Court should apply the same logic to "Complete, Balanced Nutrition®" and similar claims Bates challenges, and vacate the district court's holding that these claims are, as a matter of law, mere puffery.

### iii.    Falsity

Finally, Bates plausibly alleges "relevant studies supporting [her] theory" of deception. *See Krommenhock I*, 255 F. Supp. 3d at 963 (denying motion to dismiss allegations that sugary cereals were labeled with misleading health and wellness

claims);[11] *accord Hadley I*, 273 F. Supp. 3d at 1067 ("Given the scientific studies supporting the negative health consequences of added sugar and the factual dispute over the typical consumption of Defendant's products, the Court cannot conclude on the instant motion to dismiss that a reasonable consumer would not find Defendant's products to be unhealthy . . . .");[12] *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *8 (S.D. Cal. Aug. 17, 2018) ["*McMorrow I*"] ("The [complaint] details the reason plaintiffs allege these amounts of sugar are dangerous and the various peer-reviewed studies and reports they rely on to support their argument that consuming sugar beyond the five percent standard greatly increases health risks." (record citations omitted));[13] *Milan v. Clif Bar & Co.*, 2019 WL 3934918, at *2 (N.D. Cal. Aug. 20, 2019) (Because plaintiffs, who asserted claims under California

---

[11] A class was later certified and survived summary judgment, with the *Krommenhock* court finding "plaintiffs have ample, albeit disputed, evidence that the Products are not 'healthy' given the amounts of sugar in them and considering consumer habits regarding serving size and frequency of consumption.'" *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 569 (N.D. Cal. 2020).

[12] The *Hadley* court later certified a class of Kellogg cereal and bar purchasers, finding plaintiff offered classwide evidence of materiality and deception. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1114-15 (N.D. Cal. 2018) (Koh, J.). Following certification, other than with respect to punitive damages, the class defeated Kellogg's motion for summary judgment, and even established partial summary judgment against Kellogg for misbranding liability. *See Hadley v. Kellogg Sales Co.*, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) (Koh, J.).

[13] The *McMorrow* court later certified a class of California and New York purchasers. *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021).

and New York law, "laid out in painstaking and voluminous detail how this substantial percentage of added sugars in Clif's products can contribute to excessive sugar consumption, which in turn has been linked to many diseases and detrimental health conditions," they "'could plausibly prove that reasonable consumer would be deceived by' the Clif bars' packaging." (quoting *Williams*, 552 F.3d at 940));[14] *Johnson-Jack*, 587 F. Supp. 3d at 963 ("plaintiffs have plausibly alleged that the [Health-Ade] products are unhealthy by citing scientific studies that allegedly link the consumption of sugar-sweetened beverages to negative health outcomes"). *See generally* A15-26, Compl. ¶¶ 38-77 (discussing scientific evidence and authoritative recommendations); A26-27, 32-33 Compl. ¶¶ 78-82, 102-109 (detailing theories of deception).

In *Hadley I*, for example, the court found that where a plaintiff alleged "Defendant's products are composed of 18% to 50% added sugar by calorie," so that "at the very least . . . eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned," namely "the 5% AHA recommendation and the FDA's 10% DRV," the plaintiff had "adequately alleged that Defendant's products are unhealthy due to excess added

---

[14] The *Milan* court later certified classes of California and New York purchasers of Clif Bars and a similar children's product, Kid Z Bars. *Milan v. Clif Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2021).

sugar for the purposes of the instant motion to dismiss." 273 F. Supp. 3d at 1066. Bates makes similar allegations here. *See* A33, Compl. ¶ 103 ("[F]ollowing [Abbott's] recommendation would cause consumers to exceed the daily added sugar intake levels recommended by authoritative health bodies to prevent harm to health."); *see also* A8-14, Compl. ¶¶ 12, 16, 21, 27, 31, 34 (alleging Ensure products contain added sugar contributing between 16.4% and 40% of their calories); A24-26, Compl. ¶¶ 69-77 (authoritative guidelines).

Bates also alleges "both governmental agencies and health professionals have noted the misleading nature of Abbott's advertising of the Ensure Nutrition Drinks." A31, Compl. ¶ 97. For example, the "Federal Trade Commission . . . filed a complaint against Abbott" in which it claimed "Abbott went too far [] when it suggested that doctors recommend Ensure for healthy, active people, like those pictured in the ads, in order to stay active and healthy." *See id.*, Compl. ¶ 98 (citation omitted). Other commentators have called Ensure's advertising "alarming" and opined that consuming the beverage "is not that different from eating a bag of candy or drinking soda." *See* A31-32, Compl. ¶¶ 99-100. Harvard Health "pointed out that [Ensure] 'ads are missing important information' regarding 'sugar,' noting that 'original Ensure has 14 grams of added sugar.'" A32, Compl. ¶ 101.

These independent assessments of the misleading nature of Ensure's health and wellness marketing further bolster the plausibility of Bates' claims. *See*

*MacNaughton*, 67 F.4th at 98 n.9 (While National Advertising Division and National Advertising Review Board findings "are not binding on courts. . . . consistent with our standard of review, we still find them relevant at the pleadings stage as to the question of whether [plaintiff] has raised a plausible claim regarding how a reasonable consumer would react to the defendant's statements." (citation omitted)).

### iv. Disclosure

That Abbott must disclose Ensure's sugar content in the Nutrition Facts Panel does not render Bates' claims implausible; any such assertion is precluded both as a matter of law and Bates' pleading.

First, relying on the Ninth Circuit's decision in *Williams*, this Court has held that when evaluating a GBL claim asserted by a food purchaser, "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas*, 910 F.3d at 637.[15]

In *Williams*, the Ninth Circuit "disagree[d] . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the

---

[15] Three other circuit courts later joined in "holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476 (7th Cir. 2020); *see also Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1345 n.7 (8th Cir. 2022) ("Consumers are not expected to examine the fine-print ingredient list located on the back of a label to correct a prominent front-label misrepresentation."); *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019).

box to discover the truth from the ingredient list in small print on the side of the box." 552 F.3d at 939. It explained:

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 939-40. In a later memorandum decision, the Ninth Circuit expounded on *Williams*, writing:

> Consumers review the small print on a product's label to learn additional details about a product, not to correct potentially misleading representations found on the front. Applying the logic of *Williams* to this case, Walters did not have a duty to validate claims on the front of a product's label by cross-checking them against information contained in small print on the back.

*Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) (Mem.) (internal citation omitted).

Several courts have applied *Williams* to hold reasonable consumers have no duty to correct, by reference to a food's sugar content, misleading health and wellness impressions created its label. *See Ackerman*, 2010 WL 2925955, at *16 (Discussing *Williams* and concluding, "that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled."); *Andrade-Heymsfield I*, 2023 WL 2576770, at *4 (Nutrition Facts Panel sugar disclosure does not prevent

consumer deception); *LeGrand*, 655 F. Supp. 3d at 891 (same); *McMorrow I*, 2018 WL 3956022, at *9 (same); *Krommenhock I*, 255 F. Supp. 3d at 964 (same).

Moreover, New York courts have applied *Mantikas* to reject similar defendant arguments in analogous contexts. *See*, *e.g.*, *Colpitts*, 527 F. Supp. 3d at 583 (Because "the 'Smokehouse®' label could mislead reasonable consumers, Defendant finds no help from the disclosure on the Product's ingredient list that the almonds contain 'NATURAL HICKORY SMOKE FLAVOR.' An ingredients list on the back of a package cannot cure a misleading label on the front." (internal record citation omitted) (citing *Mantikas*, 910 F.3d at 637)); *Cooper*, 553 F. Supp. 3d at 105-106 (where defendant argued "that the disclosures on the bottom of the Products' packaging—which state that the Products are flavored malt beverages—render Plaintiffs' 'purported assumption about the [Products'] alcohol ingredients . . . unreasonable,'" the court "cannot conclude that the disclosures . . . renders [sic] Plaintiffs' 'allegations of deception implausible' as a matter of law" (some alterations in original) (internal record citation omitted) (quoting *Mantikas*, 910 F.3d at 637)).

Second, even if the argument were not precluded as a matter of law, Bates alleges reasonable consumers do not and cannot rely on sugar disclosures to understand the potential dangers of high-sugar foods—or even to know which foods qualify. *See* A27-31, Compl. ¶¶ 83-96. *Cf. Colpitts*, 527 F. Supp. 3d at 583 ("The

Complaint also pleads that it would not be unreasonable for consumers to believe that the almonds here were smoked over a fire.").

Bates alleges "[t]he average consumer is not intimately familiar with the scientific evidence regarding the health effect of consuming added sugar," A27-28, Compl. ¶ 83, and therefore "would believe that the Products provide the represented benefits notwithstanding their added sugar content," A28, Compl. ¶ 84. She also alleges "there is no way for a consumer to know—by simply looking at the label and without reviewing the scientific evidence—whether or not the Products in fact provide the claimed benefits." *Id.*, Compl. ¶ 85.

Bates further alleges "[n]umerous studies demonstrate that the Nutrition Facts Box is not sufficient to allow consumers to make accurate assessments of the healthfulness of foods and beverages." *Id.*, Compl. ¶ 86. This is because consumers have "low health literacy," and "deciding if a food or beverage is healthy or unhealthy is a complex process," a "problem [that] is exacerbated when unhealthy products bear health and wellness representations, as with the Ensure Products." A28-29, Compl. ¶¶ 87-91; *see also* A30, Compl. ¶ 92 ("Health positioning claims have the specific effect of decreasing perceptions of the presence of certain less healthful nutrients," and "[t]hus health-related marketing may mislead consumers to more positively assess the healthfulness of sugar-containing beverages." (internal quotation marks, citations, and alterations omitted)).

40

"In part as a result of low health literacy," Bates alleges "it is reasonable for consumers to believe based on Abbott's advertising that the Products provide the claimed benefits, even in light of their added sugar content." A29, Compl. ¶ 89. *Cf. Reid v. Johnson & Johnson*, 780 F.3d 952, 957 (9th Cir. 2015) (Noting "Reid contends that he is a lay consumer with no background in nutrition or food science" in finding analogous case theory plausible); *Anderson*, 607 F. Supp. 3d at 454 (

> Defendant's theory that a reasonable consumer could simply consult the ingredient list to confirm that the Product is microbiome gentle (and non-synthetic) would require the Court to credit the notion that a reasonable consumer would be familiar with what the many ingredients listed are and those ingredients' properties, origins, and effects on the skin. This is plainly untenable. (citations omitted)).

Bates further alleges eye-tracking "research shows that most ordinary consumers do not actually review the sugar content of products," A30, Compl. ¶ 95; *see also* A31, Compl. ¶ 96, and that Abbott further "distracts consumers" from Ensure's sugar content "by placing limited nutrition facts information on the front of the labeling which includes calories and protein" but "omits the amount of sugar," A30, Compl. ¶ 94. *Cf. Bell*, 982 F.3d at 476 ("Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts."); *Cooper*, 553 F. Supp. 3d at 104 ("Although 'reasonable consumer[s] do[ ] not lack common sense,' at this stage of the case, the Court may not resolve questions regarding 'the background knowledge, experience[,] and understanding of reasonable consumers' as a matter of law" (alterations in original) (internal record

citation omitted) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at \*19 (E.D.N.Y. Sept. 22, 2015))).

###### v. Omission

Although the district court dismissed them *sub silentio*, Bates independently states plausible *omissions* claims under the GBL. *See* A33, Compl. ¶¶ 105-109 (Alleging that "[w]hile representing that the Products are beneficial to overall health, and immune, digestive, and heart health, Abbott regularly and intentionally omits material information regarding the countervailing detrimental effects of added sugars on overall health, and immune, digestive and heart health," and pleading the reasons Abbott is under a duty to disclose that information).

"An omission can be 'actionable [under the GBL] where it is shown that 'a consumer could not reasonably obtain' the omitted information." *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 218 (N.D.N.Y. 2023) (quoting *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022)); *accord Oswego Laborers' Local 214 Fund*, 85 N.Y.2d at 26. Bates adequately alleges that here, including through Abbott's "active conceal[ment]." *See* A27-33, Compl. ¶¶ 83-103, 109; *cf. DeCoursey*, 673 F. Sup. 3d at 218 (declining to dismiss omissions claims under GBL where complaint's allegations were "sufficient to raise a question of fact as to whether a reasonable consumer would be able to determine, based on the publicly

42

available data, that the color additives in the Murad products are unsafe for use in the eye area").

*          *          *

Because Bates plausibly alleges Abbott, through Ensure's labeling, sends a concrete health message that is material and false, the Court should find she satisfies the second element of her GBL claims. *See Orlander*, 802 F.3d at 301.

### 3.    Injury

To plead an injury under §§ 349 and 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302 (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)). This occurs where a plaintiff alleges "the price of the product was inflated as a result of defendant's deception," *see Baron v. Pfizer, Inc.*, 840 N.Y.S. 2d 445, 448 (N.Y. App. Div. 2007).

As the district court found, A161, and Abbott did not dispute, Bates adequately alleges injury. *See*, *e.g.*, A36, Compl. ¶¶ 124, 126 ("Plaintiff paid more for the Ensure Nutrition Drinks, and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling complained of herein" and "the Ensure Nutrition Drinks were worth less than what Plaintiff and the Class paid for them."). *Cf. DeCoursey*, 673 F. Supp. 3d at 216 (finding similar allegations sufficient); *Anderson*, 607 F. Supp. 3d at 455-56 (same);

43

*Mason*, 515 F. Supp. 3d at 144 (same); *Duran*, 450 F. Supp. 3d at 350-51 (same); *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 362 (E.D.N.Y. 2014) (same).

This Court should likewise find this element of Bates' GBL claims satisfied. *See Orlander*, 802 F.3d at 302 (recognizing "price premium" theory of GBL injury for "cases . . . involv[ing] the purchase of consumable goods").

## II.    BATES' CHALLENGES ARE NOT PREEMPTED

"[T]he party asserting that federal law preempts state law bears the burden of establishing preemption." *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013)). Because preemption is an affirmative defense, it may only be decided "on a motion to dismiss when there is no disputed issue of fact raised by the defense or when the facts are completely disclosed on the face of the pleadings and nothing further can be developed by pretrial discovery or a trial on the issue." *See A.S. Goldman & Co. v. Avitar, Inc.*, 1998 WL 856112, at *3 (S.D.N.Y. Dec. 10, 1998) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277, at 468 (1990)).

While it is Abbott's burden to establish preemption, because Abbott argued, *see* A64-68, Abbott's Mot. to Dismiss ("MTD") at 14-18, and the district court held

some challenged statements are preempted nutrient content claims, A171-79, Order at 24-32, Bates preemptively addresses the issue.

A nutrient content claim "expressly or by implication[ ] characterizes the level of any nutrient which is of the type required by [section 343(q) to be in Nutrition Facts labeling]," *see* 21 U.S.C. § 343(r)(1)(A). This means generalized references to vitamins or minerals do not qualify as nutrient content claims because they do not reference a *specific* nutrient that must be declared in the Nutrition Facts Panel. Similarly, references to specific nutrients do not qualify as nutrient content claims if the nutrient is not one required to be disclosed in the Nutrition Facts Panel, such as with the HMB (β-Hydroxy β-methylbutyric acid) in Ensure Enlive Advanced.

An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium,'" 21 C.F.R. § 101.13(b)(1), while an implied nutrient content claim "(i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')," or "(ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices ***and*** is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id.* § 101.13(b)(2) (emphasis added).

"An implied nutrient content claim can only be made on the label . . . of the food if: . . . [t]he claim uses one of the terms described in this section [101.65] in

accordance with the definition for that term," *see id.* § 101.65(a)(1), *and* the claim "is made in accordance with the general requirements for nutrient content claims in § 101.13," *id.* § 101.65(a)(2);[16] *see also id.* § 101.13(b) (nutrient content claims "may not be made on the label or in the labeling of foods unless the claim is made in accordance with this regulation [21 C.F.R. § 101.13] and with the applicable regulations in Subpart D").

## A. The Challenged Claims Are Not Express Nutrient Content Claims

The challenged statements are not express nutrient content claims because they do not "direct[ly] state[ ] . . . the level (or range) of a nutrient," *id.* § 101.13(b)(1). No challenged statement even mentions a specific nutrient. *See*, *supra*, pp. 4-8; A82 (list of labeling statements for which Abbott asserts Bates' challenges are preempted).

## B. The Challenged Claims Are Not Implied Nutrient Content Claims

Nor are any of the challenged statements implied nutrient content claims. First, none "[d]escribe[] the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')[.]" *See* 21 C.F.R. § 101.13(b)(2)(i). Only two statements describe ingredients at all (as shown with underlining): (1) on Ensure Nutrition Powder, "Each serving of #1 Dr. Recommended Ensure is a source of complete, balanced nutrition™ including 26

---

[16] A third requirement is not relevant. *See id.* § 101.65(a)(3).

essential vitamins and minerals. Use this convenient mix nutrition powder for supplemental use between or with meals[]"; and (2) on Ensure Complete, "with Nutrients for Immune System Support." *See* A7-14, Compl. pp. 3-10.

But neither statement is an implied nutrient content claim. The statement on Ensure Nutrition Powder does not even identify the specific vitamins and minerals included, and thus cannot imply any is present in a certain amount. And although the statement on Ensure Complete is adjacent to non-challenged text identifying vitamins A, C, D, E, Zinc, and Selenium, *see* A87 (label proof, shield graphic), there is no suggestion in the statement or elsewhere that they are "present *in a certain amount*." *See* 21 C.F.R. § 101.13(b)(2)(i) (emphasis added).

Ensure Complete's "with nutrients for immune system support" statement is instead a structure/function claim because it "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," *see Ferrari v. Vitamin Shoppe Indus. LLC*, 70 F.4th 64, 68 (1st Cir. 2023) (quoting 21 U.S.C. § 343(r)(6)(A)). As the First Circuit explained, "[t]hat a nutrient . . . 'supports the immune system' is a structure/function claim." *Id.* (citing 65 Fed. Reg. 1000, 1006, 1028-29 (Jan. 6, 2000)). Preemption of structure/function claims, however, is limited to dietary supplements. *See* 21 C.F.R. § 101.93(f) (permitting structure function claims only on "dietary supplements"); *Bronson v. Johnson & Johnson, Inc.*, 2013

47

WL 1629191, at *6 (N.D. Cal. Apr. 16, 2013) ("preemption for structure/function claims is limited to dietary supplements, *not food labels*" (emphasis added)).

While other labeling statements Bates challenges "describe[] the food," they are also not implied nutrient content claims under 21 C.F.R. § 101.13(b)(2)(i) because they do not specify any nutrients, let alone suggest a nutrient is present in a certain amount:

- "nutrition shake"

- "advanced nutrition shake"

- "therapeutic nutrition shake"

- "nutrition drink"

- "nutrition powder"

- "complete"

- "Complete, Balanced Nutrition"

- "Complete, Balanced Nutrition® - for everyday health"

- "Complete, Balanced Nutrition®—For— Heart [and] Immune"

- "Complete is Ensure's most advanced Complete, Balanced Nutrition shake"

- For "Immune," "Digestion" and "Heart"

Even if these statements somehow characterized the level of a nutrient, Bates' challenges would still not be preempted because they do not "use one of the terms described in [§101.65]" to characterize the level of a nutrient. *See* 21 C.F.R. §

48

101.65(a)(1) (listing "Specific Requirements" for "Implied nutrient content claims and related labeling statements"); *see also* 60 Fed. Reg. 66206, 66210 (Dec. 21, 1995) ("the act requires that a nutrient content claim be made 'only if the characterization of the level made in the claim *uses terms which are defined in regulations* [. . .] .'" (emphasis added) (quoting 21 U.S.C. § 343(r)(2)(A)(i))).

Finally, none of the challenged statements are implied nutrient content claims under 21 C.F.R. § 101.13(b)(2)(ii). "#1 Doctor Recommended Brand" does not "[s]uggest that [Ensure's] . . . *nutrient content* may help consumers maintain healthy dietary practices," *see id.* (emphasis added). And that statement is always made in association with the Ensure brand name, rather than "an explicit claim or statement about a nutrient," *see id.* § 101.13(b)(2)(ii). *See also* A7-14, Compl. pp. 3-10 (showing labels); A84-95 (same) (collectively "Label Proofs").

Other challenged statements, including "nutrition shake," "complete," "advanced nutrition shake," "therapeutic nutrition shake," "nutrition drink," and "nutrition powder," are also made in connection with the Ensure brand name, rather than any statements about nutrients. *See* Label Proofs. These statements—with the exception of "complete," which is a sub-brand of Ensure, *see* A9; A87—are the products' statements of identity, and their size and placement is governed by regulation. *See* 21 C.F.R. § 101.3(a) (statement of identity must be on "[t]he principal display panel . . . as one of its principal features"); *id.* § 101.3(d)

49

("statement of identity shall be presented in bold type on the principal display panel . . . in a size reasonably related to the most prominent printed matter on such panel, and shall be in lines generally parallel to the base on which the package rests as it is designed to be displayed.").

The requirement that "[a] nutrient content claim . . . be in type size no larger than two times the statement of identity" and "not . . . unduly prominent in type style compared to the statement of identity," *id.* § 101.3(d), strongly implies statements of identity are usually distinct from nutrient content claims. Even "statement[s] of identity for a food in which an ingredient constitutes essentially 100 percent of a food," and for which the statement of identity thus directly indicates the presence of a nutrient—such as "corn oil" (fat), "oat bran" (fiber), and even "dietary supplement of vitamin C 60 mg tablet"— are "*[l]abel statements that are not implied claims.*" *See id.* § 101.65(b)(4).

That the statements Bates challenges are not "made in association with an explicit claim or statement about a nutrient" is also evident from their visual separation from other front-label statements, which appear within closed and separate graphics, and with different fonts, sizes, and orientations. *See* Label Proofs. As the *LeGrand* court explained, these statements of identity are "not placed in close enough proximity to the underlying nutrient claims to be themselves considered nutrient content [claims]." 655 F. Supp. 3d at 888 (citation omitted).

50

That the *LeGrand* court found many of the challenged statements are *not* "made in association with an explicit claim or statement about a nutrient," minimally demonstrates issues of fact regarding the sufficiency of the connection between challenged and unchallenged labeling statements. Under such circumstances, Abbott cannot meet its heavy burden at this preliminary stage of establishing that preemption applies. *See WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 501 (S.D.N.Y. 2011) ("Because discovery is required to resolve the issue of intrastate commercial impact, the Court rejects the preemption argument as a basis for a motion to dismiss the Donnelly Act claim."); *see also N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 850 F.3d 79, 86-87 (2d Cir. 2017) ("The heavy burden of overcoming th[e] presumption [against preemption] falls on the party alleging preemption . . . ." (citing *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 414 n.21 (2d Cir. 2013))).

The same is true for the remaining challenged claims—none are made in connection with statements about Ensure's nutrient content.

**Ensure Original Nutrition Shake:** "Complete, Balanced Nutrition® - for everyday health," is on the side panel of the bottle, significantly removed from any nutrient statements. While the statement appears adjacent to the Nutrition Facts Panel, "[i]nformation . . . that appears as part of the nutrition label[] is *not a nutrient content claim*[.]" *See* 21 C.F.R. § 101.13(c).

51

Although the statement does not qualify as a nutrient content claim, if it did, it would render Ensure Original Nutrition Shake misbranded: the product contains too much fat to bear a nutrient content claim using the term "health." *See* 21 C.F.R. § 101.65(d)(2)(i)(F) (foods must be "low fat" to use a "healthy" implied nutrient content claim); *id.* § 101.62(b)(2)(i)(A) ("low fat" means "contains 3 g or less of fat per reference amount customarily consumed"); A8, Compl. ¶ 15 ("All flavors of Ensure Original Nutrition Shakes contain 6 grams of fat and are thus ineligible to bear healthy nutrient content claims pursuant to 21 C.F.R. § 101.65(d).").[17]

**Ensure Complete:** "Learn About Ensure Complete's Nutrition and Benefits" and "Chat Live with a Registered Dietitian About Nutrition" appear on the side panel of the outer packaging, beneath a prominent heading, "Discover More at Ensure.com," A9, Compl. p.5. The statements below this prominent heading direct consumers to additional sources of product information and do not mention any specific nutrients. *See id.* They are also in a different font size and color, and against

---

[17] This is true for the following "health" or "healthy" statements that appear on Ensure products with too much total or saturated fat to bear healthy nutrient content claims: on Ensure Enlive Advanced, "ALL-IN-ONE blend to support your <u>health</u>," "Recommended 2 bottles per day as part of a <u>healthy</u> diet," "most advanced nutritional product, designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your <u>health</u>"; and on Ensure Original Nutrition Powder, "Complete, Balanced Nutrition® - for every day <u>health</u>." *See* A11, 15, Compl. ¶¶ 26, 37; 21 C.F.R. § 101.65(d)(2)(i)(F); *id.* §§ 101.62(b)(2) & (c)(2). Aware it is disqualified from making such claims, Abbott's Motion to Dismiss said it "does not contend that any statement using the term 'health' is an implied nutrient content claim . . . ." A65, MTD at 15 n.6.

a different background than the singular mention of the presence, but not level of "nutrients for immune system support" in the upper right corner of the panel. *See id.*; *see also* A87 (label proof).

"Complete, Balanced Nutrition®—For— Heart [and] Immune" appears twice on the outer packaging, within a standalone circular graphic, separate and apart from any nutrient statements. *See* A9, Compl. p. 5.  Moreover, Bates only challenges the statements "Immune," "Digestion," and "Heart" used outside the circular graphic when they appear on the *front* of the label, unconnected to any statement about nutrient content. *See id.* (highlighting "Immune," "Digestion," and "Heart," in red box on front label but not in the chart); *cf. LeGrand*, 655 F. Supp. 3d at 888 ("'Immune * Muscle * Heart * Digestion * Bone' on the front of the packaging for Ensure Complete Nutrition Shake stands separate from other references to nutrient content on the packaging and therefore is not an implied nutrient content claim." (record citation omitted)).

In addition, while the *unchallenged* back-label "Immune," "Digestion," and "Heart" statements may be made in connection with nutrient content claims as they appear in the chart, the statement "Complete, Balanced Meal Replacement" is not made in direct connection with them. Instead, it refers more broadly to the product as a whole, since whether something is a "complete, balanced meal replacement" requires consideration of all the nutrients being consumed as part of that "meal," not

only a select few being called out as providing specific "immune," "digestion," "heart," "muscle," and "bone" benefits. *See* A87.

**Ensure Enlive Advanced:** Although "All in One . . . Heart[,] Immune[, and] Digestion" is adjacent to a statement "20g Protein," there is nothing in the record to suggest protein is useful in maintaining healthy dietary practices regarding heart, immune, or digestive health. Instead, "All in One" refers to the product as a whole, rather than its protein content. Nor can Abbott rely on the label's "26 Vitamins & Minerals" claim because it does not state or imply any particular nutrient is "present in a certain amount." *See* 21 C.F.R. § 101.13(b)(2).

**Ensure Compact Therapeutic:** "Complete, Balanced Nutrition" on the outer packaging is intentionally offset from statements about specific nutrients, in a smaller font, with a different background color, and so does not possess the requisite "direct connection" to a governed nutrient that "the regulation shows [is] required," *see Krommenhock v. Post Foods, LLC*, 2018 WL 1335867, at *5 (N.D. Cal. Mar. 15, 2018) (discussing 21 C.F.R. § 101.65(d)). That it refers more broadly to the product as a whole is corroborated by Abbott's use of the statement across different products, in different contexts, without regard to their connection to any particular nutrient statement or content (since the products vary).

Abbott has also registered this statement as a trademark referring to the product as a whole, A124, Bates' Opp. to MTD at 20 n.14, rather than any particular

54

nutrient, and the primary purpose of trademarks is to identify the source of goods to consumers, not to communicate nutrient content. *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 343-44 (2d Cir. 1999) ("The purpose of a mark is to identify the source of products . . . to prospective consumers." (citation omitted)). The strength of a trademark, and therefore the level of protection it receives, depends on its distinctiveness, and any true nutrient content claim would likely be too generic to warrant protection. *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005) ("The strength of a mark is determined by its tendency to uniquely identify the source of the product."); *Gross v. Bare Escentuals Beauty, Inc.*, 632 F. Supp. 2d 283, 289 (S.D.N.Y. 2008) ("Generic marks are never protectable," and "[d]escriptive marks generally are unprotectable under trademark law . . . ." (citation omitted)).[18]

**Ensure Original Powder:** The statement that this product "include[s] 26 essential vitamins and minerals," is not a nutrient content claim because the *level* of those *unidentified* "26 essential vitamins and minerals," is *only* characterized in the Nutrition Facts Panel, which "is not a nutrient content claim," *see* 21 C.F.R. § 101.13(c); *see also* A95 (label proof).[19]

---

[18] This also applies to "Complete, Balanced Nutrition®" on Ensure Original (Shake and Powder), Ensure Complete, and Ensure Compact Therapeutic Shake.

[19] The full statement appears as follows: "Each serving of #1 Dr. Recommended Ensure is a source of complete, balanced, nutrition™ including 26 essential vitamins

## **CONCLUSION**

The Court should vacate the dismissal of Bates' GBL §§ 349 and 350 claims.

Dated: June 10, 2024                    Respectfully submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

***Counsel for Plaintiff-Appellant***

---

and minerals. Use this convenient mix nutrition powder for supplemental use between or with meals." A14, Compl. ¶ 35.

## <u>CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32 & L.R. 32.1</u>

I, Melanie R. Monroe, hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(7) and Local Rule 32.1(a)(4)(A), that, according to the word-count feature of Microsoft Word, the foregoing appellate brief contains 12,660 words exclusive of the table of contents, table of authorities, and this certificate, and therefore complies with the applicable word limits.

Dated: June 10, 2024 /s/ Melanie R. Monroe
Melanie R. Monroe

57