# 24-919-CV

# United States Court of Appeals

### for the

## Second Circuit

LARISSA BATES, *on behalf of herself, and all others similarly situated and the general public*,

*Plaintiff-Appellant,*

– v. –

ABBOTT LABORATORIES,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## APPELLEE'S RESPONSE BRIEF

> MICHAEL A. GLICK
> CONLEY K. HURST
> KIRKLAND & ELLIS LLP
> 1301 Pennsylvania Avenue NW
> Washington DC 20004
> (202) 389-5000
> michael.glick@kirkland.com
> conley.hurst@kirkland.com
>
> *Counsel for Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Abbott Laboratories certifies that it does not have a parent corporation and that no publicly held corporation owns more than ten percent of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES........................................................................ iii

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT .............................................................. 3

STATEMENT OF THE ISSUES ................................................................. 3

STATEMENT OF THE CASE.................................................................... 4

SUMMARY OF ARGUMENT................................................................... 8

STANDARD OF REVIEW ....................................................................... 9

ARGUMENT ..................................................................................... 10

I.      THIS COURT SHOULD AFFIRM DISMISSAL FOR FAILURE
        TO PLAUSIBLY ALLEGE FALSITY IN LIGHT OF ABBOTT'S
        CLEAR SUGAR DISCLOSURES.............................................. 10

II.     THIS COURT SHOULD AFFIRM DISMISSAL OF MANY OF
        THE CHALLENGED LABELING STATEMENTS ON OTHER
        INDEPENDENTLY SUFFICIENT GROUNDS............................... 24

        A.      Many Challenged Statements Are Indisputably True or
                Mere Puffery................................................................ 25

                1.      Indisputably True Statements.................................. 25

                2.      Puffery. ............................................................ 29

        B.      The Court Should Affirm Dismissal of Nutrient Content
                Claims as Expressly Preempted. ..................................... 34

CONCLUSION.................................................................................... 45

CERTIFICATE    OF    COMPLIANCE    WITH    TYPE-VOLUME
        LIMITATION............................................................................ 1

CERTIFICATE OF SERVICE .................................................................. 2

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. Goldmen & Co., Inc. v. Avitar, Inc.*,
1998 WL 856112 (S.D.N.Y. Dec. 10, 1998) ................................................36

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008) ................................................................35

*Anderson v. Unilever U.S., Inc.*,
607 F. Supp. 3d 441 (S.D.N.Y. 2022) ....................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................9, 40

*Bader v. Siegel*,
238 A.D.2d 272 (N.Y. App. Div. 1997) ..................................................30

*Baines v. Nature's Bounty (NY), Inc.*,
2023 WL 8538172 (2d Cir. Dec. 11, 2023)...........................................15, 16

*Bates v. Abbott Labs.*,
--- F. Supp. 3d. ---, 2024 WL 1345342 (N.D.N.Y. Mar. 29, 2024).....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................9

*Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*,
2015 WL 3645262 (E.D. Mo. June 10, 2015) ........................................31, 32

*Broder v. MBNA Corp.*,
722 N.Y.S.2d 524 (1st Dep't 2001) ........................................................13

*Brown v. Abbott Labs., Inc.*,
2011 WL 4496154 (N.D. Ill. Sept. 27, 2011)............................................26

*Brown v. Kerry Inc.*,
2021 WL 5446007 (S.D.N.Y. Nov. 22, 2021)............................................11

*Buono v. Tyco Fire Prods., LP*,
78 F.4th 490 (2d Cir. 2023) ................................................................36

*Bustamante v. KIND, LLC*,
    100 F.4th 419 (2d Cir. 2024) ........................................................20, 21

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020).............................................12, 13, 25, 26

*Clark v. Perfect Bar, LLC*,
    2018 WL 7048788 (N.D. Cal. Dec. 21, 2018),
        *aff'd*, 816 F. App'x 141 (9th Cir. 2020) ..................................18

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................14

*Cooper v. Anheuser-Busch, LLC*,
    553 F. Supp. 3d 83 (S.D.N.Y. 2021) ...................................................14

*Critcher v. L'Oreal USA, Inc.*,
    959 F.3d 31 (2d Cir. 2020) .........................................................35, 37

*Dimond v. Darden Rests., Inc.*,
    2014 WL 3377105 (S.D.N.Y. July 9, 2014)........................................23

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022) .................................................30

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................9, 10, 13

*Foster v. Whole Foods Mkt. Grp., Inc.*,
    2023 WL 8520270 (2d Cir. Dec. 8, 2023)..............................15, 16, 17

*Geffner v. Coca-Cola Co.*,
    928 F.3d 198 (2d Cir. 2019) ..............................................................10

*Glover v. Bausch & Lomb Inc.*,
    6 F.4th 229 (2d Cir. 2021) ................................................................18

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017)........................................19, 34

*Hardy v. Olé Mex. Foods, Inc.*,
    2023 WL 3577867 (2d Cir. May 22, 2023)..............................15, 16, 18

*Hughes v. Talen Energy Mktg., LLC*,
    578 U.S. 150 (2016)........................................................................35

*Int'l Code Council, Inc. v. UpCodes Inc.*,
    43 F.4th 46 (2d Cir. 2022) ............................................13, 31, 32, 33

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) ...........................................10, 13, 28

*Johnson-Jack v. Health-Ade LLC*,
    587 F. Supp. 3d 957 (N.D. Cal. 2022)...............................................19

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) .................................................................8

*Kennedy v. Mondelēz Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020)....................................26

*Kirschner v. JP Morgan Chase Bank, N.A.*,
    79 F.4th 290 (2d Cir. 2023) .................................................................9

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017),
        *aff'd*, 710 F. App'x 43 (2d Cir. 2018) ......................................17

*Krommenhock v. Post Foods, LLC*,
    255 F. Supp. 3d 938 (N.D. Cal. 2017)...........................................19, 44

*La Vigne v. Costco Wholesale Corp.*,
    772 F. App'x 4 (2d Cir. 2019) ...........................................................23

*Lacoff v. Buena Vista Publ'g, Inc.*,
    183 Misc.2d 600 (N.Y. 2000).............................................................30

*LeGrand v. Abbott Labs.*,
    655 F. Supp. 3d 871 (N.D. Cal. 2023)........................................*passim*

*MacNaughton v. Young Living Essential Oils, LC*,
    67 F.4th 89 (2d Cir. 2023) .....................................................32, 33, 34

*Mantikas v. Kellogg Company*,
    910 F.3d 633 (2d Cir. 2018).................................................14, 16, 17

*Marentette v. Abbott Lab'ys, Inc.*,
886 F.3d 112 (2d Cir. 2018) ................................................................36

*Mazella v. Coca-Cola Co.*,
548 F. Supp. 3d 349 (S.D.N.Y. 2021) ..................................................11

*McGinity v. Proctor & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) ..............................................................20

*McMorrow v. Mondelez Int'l, Inc.*,
2018 WL 3956022 (S.D. Cal. Aug. 17, 2018)......................................19

*Melendez v. ONE Brands, LLC*,
2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020)...............................11, 22

*In re Meta Materials Inc. Sec. Litig.*,
2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023) .....................................31

*Milan v. Cliff Bar & Co.*,
2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ......................................19

*Milich v. State Farm Fire & Cas. Co.*,
513 F. App'x 97 (2d Cir. 2013) ............................................................24

*Morgan v. Wallaby Yogurt Co., Inc.*,
2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ........................................18

*Morris v. Walmart Inc.*,
2020 WL 5645812 (N.D. Ala. Sept. 22, 2020).....................................26

*N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*,
850 F.3d 79 (2d Cir. 2017) ..................................................................36

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*,
2008 WL 1752455 (S.D.N.Y. Apr. 16, 2008),
*aff'd*, 556 F.3d 114 (2d Cir. 2009).........................................................21

*Nelson v. MillerCoors, LLC*,
246 F. Supp. 3d 666 (E.D.N.Y. 2017) ..................................................10

*Otis-Wisher v. Medtronic, Inc.*,
616 F. App'x 433 (2d Cir. 2015) ..........................................................36

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008) ...........................................36, 44

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009) ...............................................................9

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
579 U.S. 115 (2016)...........................................................................36

*Roe v. St. John's Univ.*,
91 F.4th 643 (2d Cir. 2024) ................................................................9

*Solak v. Hain Celestial Grp., Inc.*,
2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018).............................11, 25

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
646 F. Supp. 2d 510 (S.D.N.Y. 2009) ...............................................31

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) ........................................................30, 32

*Truxel v. Gen. Mills Sales, Inc.*,
2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ...................................18

*Venticinque v. Back to Nature Foods Co., LLC*,
2024 WL 3385136 (2d Cir. Jul. 12, 2024)..........................................17

*Warren v. Whole Foods Mkt. Grp., Inc.*,
574 F. Supp. 3d 102 (E.D.N.Y. 2021) ...............................................17

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) .............................................................20

*Womack v. EVOL Nutrition Assocs., Inc.*,
2022 WL 3371213 (N.D.N.Y. Aug. 16, 2022)....................................23

*WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*,
851 F. Supp. 2d 494 (S.D.N.Y. 2011) ................................................36

**Statutes**

21 U.S.C. § 323(r)(1) ..............................................................................2

21 U.S.C. § 343-1...................................................................................36

21 U.S.C. § 343-1(a) ...................................................................35, 44

21 U.S.C. § 343-1(a)(5) ................................................................2, 36

21 U.S.C. § 343(r) ............................................................................35

28 U.S.C. § 1291 ................................................................................3

28 U.S.C. § 1332(d)(2)(A) .................................................................3

## Rules

Fed. R. App. P. 32(a)(5) ....................................................................1

Fed. R. App. P. 32(a)(6) ....................................................................1

Fed. R. App. P. 32(f) .........................................................................1

Fed. R. Civ. P. 9 ................................................................................7

## Other Authorities

21 C.F.R. § 101.13(b)(2) .........................................................3, 35, 37

81 Fed. Reg. 33742-01, 33763 (May 27, 2016) ...............................21

**INTRODUCTION**

In a thorough, 51-page opinion, the district court dismissed Plaintiff Larissa Bates's complaint alleging that a handful of statements on the labels of Abbott Laboratories' Ensure products are misleading. As the district court recognized, all of Bates's claims rest on a single flawed premise: that the labels mislead reasonable consumers about the products' sugar content—even though not a single challenged labeling statement so much as mentions sugar and even though those same labels disclose exactly how much sugar each product contains. For that reason alone, the district court correctly held, Bates's claims fail as a matter of law.

On appeal, Bates doubles down on this same illogical theory. Bates posits that reasonable consumers making decisions about whether Ensure products have too much sugar for their own individual health needs either ignore or do not understand the parts of the labels that ***affirmatively state how much sugar the products contain*** and instead rely solely on other statements on the label that ***do not even reference sugar***. But courts applying New York law routinely reject false labeling claims on grounds that a product's ingredient disclosures give consumers the information needed to judge a product's nutritional value for themselves where, as here, the challenged statements do not conflict with those disclosures. This case is no different.

The district court's dismissal should be affirmed on that basis alone, and this Court need not reach any other issue. But the district court went further, dismissing many of the challenged statements on two other bases that Bates attacks here.

***First,*** the district court independently dismissed many of the challenged labeling statements as either indisputably true or as non-actionable puffery. For example, Bates nowhere denies that Ensure is in fact the "#1 Doctor Recommended Brand" or is made "With Nutrients for Immune System Support." Further, several other challenged statements—particularly those containing the words "complete" or "advanced"—are non-specific and unmeasurable statements that constitute classic non-actionable puffery. The district court's holding on this ground should be affirmed as well.

***Second,*** the district court dismissed Bates's challenges to several other statements as expressly preempted by federal law. The Federal Food, Drug, and Cosmetic Act prohibits state law from "directly or indirectly" establishing any requirement regarding food label claims that "characterize" the nutrient content of a food. 21 U.S.C. § 343-1(a)(5); 21 U.S.C. § 323(r)(1). In other words, challenges to labeling statements characterizing a product's nutrient content are expressly preempted by federal law. Such nutrient content statements can be either direct or implied; a statement qualifies as an implied nutrient content claim when it either (i) describes a product or an ingredient therein "in a manner that suggests that a

nutrient is absent or present in a certain amount," or (ii) is "made in association with" a claim about a nutrient and suggests that the product "may be useful in maintaining healthy dietary practices" "because of its nutrient content." 21 C.F.R. § 101.13(b)(2). Here, the district court concluded that several challenged statements qualify as implied nutrient content claims because they are made in connection with representations about nutrient content (*e.g.*, "20g Protein," "27 Vitamins and Minerals"). As even a cursory inspection of Ensure's labels shows, that decision was correct. The dismissal of Bates's preempted nutrient content claims should be affirmed on this independently sufficient basis too.

The Court should affirm the district court's dismissal on all grounds.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). The district court's March 29, 2024 Order was a final judgment that disposed of all of Bates's claims, and this Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1) Whether Bates plausibly states claims under New York General Business Law Sections 349 and 350 by alleging that Ensure's labeling materially misleads consumers about how much sugar is in Ensure where the challenged

3

labeling statements make no claim whatsoever about sugar and the Ensure label expressly sets out its sugar content.

2)    Whether Bates states claims under New York General Business Law Sections 349 and 350 as to challenged statements that are either indisputably true or constitute non-actionable puffery as a matter of law.

3)    Whether Bates states claims under New York General Business Law Sections 349 and 350 as to challenged statements that are expressly preempted by the Federal Food, Drug, and Cosmetic Act.

## STATEMENT OF THE CASE

Abbott manufactures, markets, and distributes several lines of nutrition shakes and drinks under the brand name Ensure. *See* A5. Abbott's Ensure products come in various sizes and flavors, such as vanilla, strawberry, and chocolate. *See* A5; A8. The products contain numerous vitamins and minerals to support immune, heart, and digestive health, including Vitamins A, B, C, D, and E, Iron, Zinc, Calcium, and Potassium; they also contain nutrients such as protein and fiber, as well as water, fat, and carbohydrates like sugar. *See* A5; A77–78, A84–95. Given the products' vitamins and nutrients, Abbott describes Ensure as a "nutrition" product designed to provide "Complete, Balanced Nutrition" for "everyday health" and to "help rebuild . . . strength and energy from the inside." *See* A85; A89.

Bates alleges that numerous statements on the Ensure label are false and misleading because Ensure products purportedly contain too much sugar. A5–6. But Abbott's product labels do not misrepresent the sugar content of Ensure at all. In fact, none of the statements challenged by Bates characterize or make any representation about sugar, and the federally mandated Nutritional Facts Panel on every Ensure label expressly discloses not only that sugar is an ingredient but also exactly how many grams of sugar the product contains:



*E.g.*, A89 (Ensure Enlive label); A93 (Ensure Clear label). Based on these explicit disclosures, consumers and their doctors can decide whether Ensure is right for their individual health needs and, if so, which Ensure product to buy. *See* A54.

Nonetheless, Bates claims she was deceived into purchasing Ensure based on various statements that do not mention sugar. She contends that she was on the search for a "healthy beverage," and that had she known of the product's sugar content, she would not have purchased Ensure. A35–37. Based on this theory, Bates asserted six claims for damages and injunctive relief against Abbott: two claims under New York's General Business Law (GBL) Sections 349 and 350 (Counts I-II), breach of express warranty (Count III), negligent misrepresentation (Count IV), intentional misrepresentation (Count V), and unjust enrichment (Count VI). A38–43.

This case is Bates's second attempt to advance her claims. In her first, a California district court dismissed her claims for lack of personal jurisdiction because they were based on New York purchases and lacked any nexus to California. *See LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 884–85 (N.D. Cal. 2023).[1]

---

[1] The *LeGrand* case in the Northern District of California originally involved two named plaintiffs: Bates and a California resident who alleged purchases of Ensure in California. After dismissing Bates's claim, the California district court allowed some aspects of the California plaintiff's claims to proceed past the pleadings stage based on California law, as interpreted by California courts and the Ninth Circuit.

Several weeks later, Bates filed a new complaint in the Northern District of New York. A5. That New York complaint is the subject of this appeal.

Abbott moved to dismiss the New York complaint in full. A45–74. The district court agreed, dismissing Bates's complaint in its entirety on the basis that Bates had not plausibly pleaded that the challenged labeling statements were materially misleading to a reasonable consumer, particularly in light of the sugar disclosure on every product label. A148–98; *Bates v. Abbott Labs.*, --- F. Supp. 3d. ---, 2024 WL 1345342 (N.D.N.Y. Mar. 29, 2024). The district court also dismissed many of the challenged statements on two independently sufficient bases. First, the district court found that many of the challenged statements were either indisputably true or non-actionable puffery. Second, the court found that Bates's challenge to several of the labeling statements was preempted by federal law.

In addition, the district court dismissed Bates's four common law claims for several independent reasons. Specifically, the court found that Bates had failed to provide the required pre-suit notice to Abbott to support her express warranty claim; had not pleaded the sort of special relationship between Bates and Abbott necessary for a negligent misrepresentation claim; lacked the particularity required by Federal Rule of Civil Procedure 9 for an intentional misrepresentation claim; and could not make out an unjust enrichment claim because it was duplicative of her other claims. Finally, the court found that Bates lacked standing to request injunctive relief.

Bates now appeals. As laid out in her opening brief, Bates challenges only the dismissal of her statutory claims under the New York GBL, Sections 349–350 (Counts I–II). By not challenging the district court's other holdings, Bates has waived any appeal of the dismissal of her other claims (Counts III–VI) and of the dismissal of her request for injunctive relief. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal.

As a matter of law, the challenged statements on Ensure's labels are not materially misleading because they make no statements whatsoever about sugar except to truthfully disclose precisely how much sugar Ensure contains. On this basis alone this Court should affirm the district court's dismissal of Bates's case in its entirety.

In addition, the district court dismissed many of the challenged labeling statements on two independently sufficient bases: (i) several of the challenged statements are either patently true or constitute puffery, and (ii) certain other statements are made in connection with representations about the product's nutrient content such that Bates's state-law challenge to such statements is barred as preempted by federal law. These holdings too should be affirmed.

8

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam) (citation omitted). While the complaint's factual allegations are assumed to be true, legal conclusions are not, and thus "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S.at 678).

This Court reviews the grant of a motion to dismiss de novo. *Kirschner v. JP Morgan Chase Bank, N.A.*, 79 F.4th 290, 303 (2d Cir. 2023). This Court also reviews de novo "a district court's application of preemption principles." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009).

## ARGUMENT

## I.   THIS COURT SHOULD AFFIRM DISMISSAL FOR FAILURE TO PLAUSIBLY ALLEGE FALSITY IN LIGHT OF ABBOTT'S CLEAR SUGAR DISCLOSURES.

A plaintiff asserting false labeling or deceptive business practices claims under New York law must plausibly allege that a challenged label was likely to mislead a reasonable consumer acting reasonably under the circumstances. *See Fink*, 714 F.3d at 741. To do so, a plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (Mem.) (internal quotation and citation omitted). Instead, a plaintiff must plausibly allege that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *See id.* (internal quotation omitted). As this Court has stated, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Critically, in determining whether a reasonable consumer would have been misled, "the presence of a disclaimer or other similar clarifying language may defeat a claim of deception." *See id.* at 742; *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200–01 (2d Cir. 2019); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017). New York law does not presume that a reasonable consumer will

10

"'simply assume' something about [a] product that a cursory inspection would not show to be true." *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 356 (S.D.N.Y. 2021) (citation omitted) (emphasis added).

For that reason, courts applying New York law routinely dismiss false labeling claims where the manufacturer provides a clarifying disclosure of the product's contents elsewhere on the label. *Id.* at 356–58; *see, e.g.*, *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) ("[A]ny potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging, which lists the amount of carbohydrates and calories in each bar."); *Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *1, *5 (N.D.N.Y. Apr. 17, 2018) ("[T]he list of ingredients included on the [p]ackaging makes abundantly clear that the [p]roduct contains only processed derivatives of the pictured vegetables.").

That commonsense principle has been applied to sugar disclosures on a product's Nutrition Facts Panel. *Brown v. Kerry Inc.*, 2021 WL 5446007, at *6 (S.D.N.Y. Nov. 22, 2021) (dismissing New York claims based on sale of "Slightly Sweet" chai tea latte where "the Product's Nutrition Fact Panel lists the sugar and calorie contents of the beverage"), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022); *Mazella*, 548 F. Supp. 3d at 357 ("Courts have

found that the inclusion of the Nutrition Fact Panel ensures that there is no ambiguity as to the amount of calories and sugar in a product, and, thus, no misleading claim.").

The district court correctly applied this principle to dismiss Bates's claims. Addressing Bates's theory that the challenged statements "give the false impression that the products are healthy and provide complete nutrition" (which Bates alleged was misleading because "added sugars are fundamentally unhealthy and contrary to complete nutrition"), the court explained that a "consumer who agrees with Plaintiff's perspective that such added sugar vitiates any other health benefits the drinks may contain can look at the labels and determine how much sugar the drinks contain." A165-66. Because the challenged statements do not so much as reference sugar—much less make any false statement or mischaracterization about it—"any misconception about the contents of the Ensure drinks based on claims about positive benefits can be resolved by a consumer who looks at the sugar content on the labels." A166. Therefore, the district court held, Bates had not plausibly alleged that Ensure's labeling is materially misleading. A167.

This result is not only consistent with but compelled by this Court's precedent. In *Chufen Chen v. Dunkin' Brands, Inc.*, for example, this Court considered New York false advertising claims based on the use of "steak" in television commercials for a fast-food sandwich. 954 F.3d 492, 501 (2d Cir. 2020). Noting that the commercials depicted the product as a beef patty and contained "Angus

beef," this Court reasoned that "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed," and thus held that the challenged statements could not be misleading. *Id.* (quoting *Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (1st Dep't 2001)). Likewise, in *Fink*, this Court rejected plaintiffs' assertions that Time Warner's advertisements—including that its internet service was "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up"—were deceptive in light of "multiple disclaimers and explanatory language, including the statement, '[a]ctual speeds may vary.'" 714 F.3d at 741–42, nn. 2 & 3. As this Court explained in affirming dismissal, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* at 742; *see also Jessani*, 744 F. App'x at 19–20 (label describing product as "Truffle Flavored" not misleading where "product's ingredient list contains no reference to the word 'truffle'").

Bates does not—and cannot—dispute that every label on every Ensure product sets out exactly how much sugar it contains. Instead, she tries to sidestep Ensure's sugar disclosures by arguing that "reasonable consumers have no duty to correct, by reference to a food's sugar content, misleading health and wellness impressions created by its label." Bates Br. at 38. There are two problems with Bates's argument.

*First*, Bates's cited cases are inapposite because the challenged statements here are not unambiguous false statements about the ingredients in Ensure. A165. As the district court rightly concluded, the Ensure products "do not make any claims about sugar content and, thus, do not offer any misleading information about the amount of sugar that the products contain." A166. Put differently, the challenged statements do not mention sugar, so are at most ambiguous such that any "misconception" by a consumer could be resolved by consulting the Nutrition Facts Panel. A166.

That sets this case apart from the New York cases Bates cites involving ingredient-based claims. For example, *Mantikas v. Kellogg Company* involved statements describing the very ingredient in question there (whole grain) that were not merely ambiguous but rather ***inconsistent*** with the label's other disclosures about that same ingredient. 910 F.3d 633, 636–37 (2d Cir. 2018). Specifically, the front of the label in *Mantikas* explicitly stated the product was "MADE WITH WHOLE GRAIN" while the side-label disclosure showed the product was not wholly or even predominantly made with whole grain. *Id.*; *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (holding front-label "Smokehouse" claim plausibly misled consumers into believing that almonds were prepared through a natural smoking process); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 91, 94 (S.D.N.Y. 2021) (holding front-label "SPARKLING

14

MARGARITA" and "SPARKLING ROSÉ COCKTAIL" claims plausibly misled consumers into believing the beverages included tequila and rosé, respectively). In other words, in those cases, plaintiffs challenged (1) an explicit front-label statement about the specific product attribute in question that (2) conflicted with disclosures about that same specific product attribute on the Nutrition Facts Panel. Both of those features are entirely absent here.

To the contrary, this case is on all fours with three cases decided by this Court just last year, all of which Bates ignores. In each, this Court affirmed dismissal of New York GBL Section 349 and 350 claims where the challenged labeling statements were not affirmatively inaccurate but rather at most ambiguous and any ambiguity could be clarified by reference to other parts of the label. *See Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *2–3 (2d Cir. Dec. 11, 2023) (summary order) (label of fish oil capsules containing esterified oil not misleading where front label claimed products contained fish oil and back label stated that the fish oil had been esterified); *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *1–2 (2d Cir. Dec. 8, 2023) (summary order) (fish oil capsule labels not misleading where front label stated "1000 mg" and "Omega-3s" and back label stated that the capsules contained 1000 mg of fish oil, which included 300 mg of Omega-3s); *Hardy v. Olé Mex. Foods, Inc.*, 2023 WL 3577867, at *2–3 (2d Cir. May 22, 2023) (summary order) (tortilla labels that included depiction of Mexican

flag on front were not misleading as to product origin when back label disclosed product was made in United States). In each case, the Court applied—but distinguished—*Mantikas*, which itself reaffirmed that "an allegedly misleading statement must be viewed in light of its context on the product label or advertisement as a whole." 910 F.3d at 636 (internal quotation omitted).

For example, in *Foster*, this Court observed that the plaintiff's challenge "[did] not involve an affirmatively inaccurate statement," and that "[e]ven assuming that the representation on the front label might be considered ambiguous, the additional information on the [product's] back label provides clarifying language that definitively dispels any arguable ambiguity on the front." 2023 WL 8520270, at *2; *see also Baines*, 2023 WL 8538172, at *3 ("To the extent the front label leaves any ambiguity about the contents of Defendants' product, the back label provides sufficient clarification."); *Hardy*, 2023 WL 3577867, at *3 ("[*Mantikas*'s] 'front-of-the-package' rule does not apply here, where the front-side packaging makes no express representations as to the origin of the La Banderita Products, while the back of the packaging unambiguously notes where the products were 'made' and 'manufactured.'"). So too here: None of the challenged statements make any affirmative representation regarding sugar (much less an allegedly inaccurate one),

and to the extent the challenged statements leave any ambiguity, the product's sugar disclosures dispel them. *Foster*, 2023 WL 8520270, at *2.[2]

**Second**, the front-versus-back label cases that Bates cites have no force where, as here, a number of the challenged statements they attack themselves appear on the side or back of the label, in direct proximity to the Nutrition Facts Panel. It is implausible that a reasonable consumer would take the time to view and internalize back- and side-label statements that purportedly speak to the product's healthfulness—while ignoring the very nutrient panel disclosures right next to them that dispel any claimed confusion. Put differently, it is unreasonable as a matter of law to accept the allegation "that a reasonable consumer interested in a product's sugar content would ignore the very place its sugar content is disclosed." *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 115 (E.D.N.Y. 2021); *see also Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311–12 (S.D.N.Y. 2017) ("Assuming that a reasonable consumer might ignore the evidence plainly before

---

[2] Although reversing a district court's dismissal of Section 349 and 350 claims, the Court's recent order in *Venticinque v. Back to Nature Foods Co., LLC*, 2024 WL 3385136 (2d Cir. Jul. 12, 2024) (summary order), is also illustrative. There, as in *Mantikas*, the allegedly misleading front-label statement specifically referenced the at-issue ingredient—there, "ORGANIC WHOLE WHEAT FLOUR." *Id.* Thus, this Court explained, "the front of the package [was] not merely ambiguous, but arguably falsely implie[d] that a prominently-mentioned ingredient . . . predominates." *Id.* By contrast here, none of the challenged statements mention or characterize the ingredient at issue (sugar), making the statements at most ambiguous and placing Bates's claims squarely in the dismissal line of cases.

17

h[er] attributes to consumers a level of stupidity that [courts] cannot countenance and that is not actionable under [New York law]." (internal quotations omitted)), *aff'd*, 710 F. App'x 43 (2d Cir. 2018) (summary order).

Bates's reliance on a handful of cases where courts applied California law is equally unavailing. As an initial matter, as this Court put it in *Hardy*, that some California district courts applying California statutes reached a different result "is of no moment" and "has no binding effect on this Court." 2024 WL 36577867, at *3 n.3 (citing *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 240 (2d Cir. 2021)).

Further, Bates has no real answer to California precedent ***dismissing*** false labeling claims like hers based on the exact arguments the district court adopted here. *See, e.g.*, *Clark v. Perfect Bar, LLC*, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) (holding that "[n]o consumer, on notice of the actual ingredients" of a product, "could reasonably overestimate the health benefits of" the product "merely because the packaging elsewhere" allegedly implies the product is healthy), *aff'd*, 816 F. App'x 141 (9th Cir. 2020); *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) (holding that "[p]laintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because [d]efendant provided them with all truthful and required objective facts about its products, on both the side panel of ingredients and the front of the products' labeling"); *Morgan v. Wallaby Yogurt Co., Inc.*, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013) ("If a

18

reasonable consumer was concerned about sugar content, he or she can see how much sugar is in [the] product next to the ingredient list."). Rather than even attempt to distinguish these cases, Bates simply ignores them.

Nor does Bates seriously defend the reasoning of her preferred California cases, which are distinguishable or under-developed. For example, in *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017), and *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), plaintiffs challenged label statements indicating that certain cereals had "low sugar content"—allegations that are absent here. Moreover, neither *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957 (N.D. Cal. 2022), nor *Milan v. Cliff Bar & Co.*, 2019 WL 3934918 (N.D. Cal. Aug. 20, 2019), nor *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018), explain how a consumer can mount a false labeling claim based on a product's sugar content where she concedes that she does not understand (and is incapable of understanding) the degree to which added sugar harms health or how to evaluate a product's healthfulness. *See, e.g.*, A35 ("At the time of her purchases, Plaintiff was unaware of the extent to which consuming high amounts of added sugar adversely affects health or what amount of added sugar might have such an effect."). That leaves *LeGrand*, where a California district court applied California law to allow some of a California plaintiff's claims against Abbott to proceed past the pleadings stage. 655 F. Supp. 3d at 880. But *LeGrand* is neither precedential nor

19

persuasive, particularly as compared to the New York district court's opinion in this case applying New York law.

Regardless, all of Bates's California cases—including *LeGrand* and the cases it cites—pre-date recent Ninth Circuit precedent making clear that when "a front label is ambiguous, that ambiguity can be resolved by reference to the back label." *McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023).  This is unlike the situation presented by cases like *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)—on which Bates (and *LeGrand*) heavily relies—where the challenged labeling statement ***conflicted*** with a statement elsewhere on the label. Because the challenged statements here do not even mention sugar, they do not conflict with the sugar disclosure in the Nutrition Facts Panel.  *See McGinity*, 69 F.4th at 1099 (affirming dismissal where ingredients list "clarifies" any ambiguity in the challenged statements).

Bates also argues that this Court should adopt the reasoning in *LeGrand* based on *Bustamante v. KIND, LLC*, 100 F.4th 419 (2d Cir. 2024), which, according to Bates, confirmed there is "substantial overlap" between California and New York consumer protection and false advertising law.  Bates Br. at 2.  But Bates takes the "substantial overlap" language out of context.  In *Bustamante*, this Court ***assumed*** for purposes of appeal that there was "substantial overlap" between California and New York law, while acknowledging that "the required elements of claims under

each statute vary." 100 F.4th at 426. Regardless, the Second Circuit there affirmed a grant of summary judgment to a snack food manufacturer where plaintiffs failed to demonstrate that reasonable consumers would consistently interpret "All Natural" to mean that the product contained no man-made ingredients. *Id.* at 432–34. Similarly, Bates here cannot show that reasonable consumers interpret the challenged statements to mean that Ensure has any particular sugar level—especially where none of the challenged statements even mention sugar.

Nor is it any answer for Bates to claim that reasonable consumers do not understand the sugar disclosures on Ensure. *See* Bates Br. at 39; A27–29. Crediting Bates's argument would nullify the importance of sugar disclosures on product labels, which the FDA has mandated for decades. *See N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 2008 WL 1752455, at *2 (S.D.N.Y. Apr. 16, 2008), *aff'd*, 556 F.3d 114 (2d Cir. 2009). Contrary to Bates's position, the FDA has concluded that "consumers use the Nutrition Facts [Panel] at point-of-purchase and review the nutrient contribution of food products to help them choose products and compare products," and that consumers "have the information they need to achieve a healthy dietary pattern" because sugar content is disclosed. *See* 81 Fed. Reg. 33742-01, 33763 (May 27, 2016).

Denying this commonsense reality, as Bates urges the Court to do, would make it irrelevant if Abbott displayed the product's sugar content on the front of

Ensure's label in bold, red font, because under her theory reasonable consumers would not be able to understand the import of the sugar content anyway. That is not the law in New York, which expressly recognizes that the Nutrition Facts Panel "is exactly the spot consumers are trained to look for" information about a product's ingredients so they may make informed purchasing decisions. *See Melendez*, 2020 WL 1283793, at *7 (citation omitted).[3]

Bates's ignorant-consumer argument is also inconsistent with her own allegations. Bates claims on one hand that Ensure labels create the general impression for reasonable consumers that the product is "healthy" when, in light of the product's sugar levels, it purportedly is not. Accordingly, Bates says reasonable consumers would not have purchased Ensure or would have paid less for it had they known the truth. *See* A5–6. At the same time, though, Bates alleges that average consumers do not understand the health effects of consuming added sugar. Bates cannot have it both ways: She cannot plausibly claim consumers would have made different purchasing decisions had they been informed about a product's sugar

---

[3]    Bates's cited cases involving obscure, ambiguous ingredient descriptions are inapposite. *See, e.g.*, *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 454 (S.D.N.Y. 2022) ("It is common knowledge that cosmetic and personal care products . . . are typically made up of a long list of ingredients, most of which are referred to by a scientific name with which an ordinary consumer would be unfamiliar."). Unlike determining whether a non-synthetic ingredient is "microbiome gentle" (as in *Anderson*), ordinary consumers are generally aware of sugar levels as well as the general effects of excessive sugar consumption.

22

content while simultaneously alleging that consumers have no ability to understand the import of that information even when it is explicitly disclosed. Under this reasoning, a plaintiff could use a label's generic impression of "healthfulness" to smuggle in unlimited theories of falsity, and manufacturers would be subject to false-labeling claims based upon even the disclosure of specific levels of ingredients about which a consumer might purport to lack knowledge at the time of purchase. That cannot be the law.

To the extent Bates purports to rely on an omission theory, the district court correctly dismissed it as well.[4] Under New York law, a plaintiff cannot sustain a GBL omission claim where she "fails to plausibly allege that consumers could not have reasonably discovered" the relevant information "or that the existence of [the relevant information] was exclusively within Defendant's knowledge." *Womack v. EVOL Nutrition Assocs., Inc.*, 2022 WL 3371213, at *5 (N.D.N.Y. Aug. 16, 2022) (dismissing New York GBL omission claim based on presence of a chemical in a product where the product's label listed the chemical as an ingredient); *Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *14 (S.D.N.Y. July 9, 2014) (dismissing

---

[4] Bates says, without further explanation, that the district court dismissed her omission claims "*sub silentio*." Bates Br. at 42. While Bates's argument on this point is unclear, this Court can and should affirm the dismissal of Bates's omission claims regardless of the level of explanation provided by the district court. *See La Vigne v. Costco Wholesale Corp.*, 772 F. App'x 4, 5 (2d Cir. 2019) (summary order) ("This Court may affirm 'on any ground which finds support in the record.'").

GBL omission claim based on restaurant not listing beverage prices on its menu where plaintiff could "reasonably obtain" those prices by asking). Again, Bates does not dispute that Ensure's labels explicitly identify the product's sugar content. If a consumer is interested in the product's sugar content, that consumer could easily obtain that information by reviewing the label. In essence, Bates complains that Abbott chose not to provide *additional* statements flagging that Ensure contains sugar. But such an allegation cannot form the basis of an omission claim under the GBL. *See Milich v. State Farm Fire & Cas. Co.*, 513 F. App'x 97, 99 (2d Cir. 2013) (summary order) (noting that GBL § 349 "does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation").

The district court correctly dismissed Bates's claims in full on this basis, and this Court should affirm.

## II. THIS COURT SHOULD AFFIRM DISMISSAL OF MANY OF THE CHALLENGED LABELING STATEMENTS ON OTHER INDEPENDENTLY SUFFICIENT GROUNDS.

Bates's failure to plausibly plead falsity in light of Ensure's explicit sugar disclosures is dispositive of the entire case, as Bates implicitly concedes. *See* Bates Br. at 18. The Court therefore need not reach the district court's alternative bases for dismissing many of the challenged statements. If it does, however, the district court should be affirmed on these bases as well.

### A. Many Challenged Statements Are Indisputably True or Mere Puffery.

#### 1. Indisputably True Statements.

The district court correctly dismissed Bates's challenge to several inarguably true Ensure label claims. Settled precedent holds that courts properly dismiss false labeling challenges where—as here—there is no plausible allegation that a label statement is false or misleading. *See Dunkin' Brands*, 954 F.3d at 501 (affirming dismissal of New York GBL challenge to "Angus Steak" description where the product contained Angus beef); *Solak*, 2018 WL 1870474, at *3 (dismissing New York GBL claims where the "label simply presents the consumer with a factually true statement—that the Straws are somehow derived from vegetable-based products"). Bates does not plausibly allege that the statements "#1 Doctor Recommended Brand" and "With Nutrients for Immune System Support" as well as statements referring to how consumers can obtain additional information about Ensure are false, and thus those statements were properly dismissed.[5]

**"#1 Doctor Recommended Brand":** Abbott's statement that Ensure is the "#1 Doctor Recommended Brand" is true. Bates does not allege anything to the

---

[5] Specifically, the district court found five statements to be non-actionable because Bates did not allege that the statement was false: (1) "#1 Doctor Recommended Brand," *see* A167; (2) "With nutrients for immune system support," *see* A168; (3) "Discover More at Ensure.com," *see* A167–68; (4) "Learn About Ensure Complete Nutrition and Benefits," *see* A167–68; and (5) "Chat Live with a Registered Dietician About Nutrition," *see* A167–68.

contrary, instead claiming that the statement is misleading because it "materially reinforces and lends credibility" to the idea that Ensure is "healthy, effective at providing the claimed benefits, and backed by scientific evidence." A8; *see also* Bates Br. at 24. As the district court correctly pointed out, though, Bates does not allege that the statement is false. *See* A167. Accordingly, Bates's claims premised on this statement fail. *Dunkin' Brands*, 954 F.3d at 501; *see also, e.g.*, *Brown v. Abbott Labs., Inc.*, 2011 WL 4496154, at *4 n.3 (N.D. Ill. Sept. 27, 2011) (dismissing challenge to statement "#1 brand fed in hospitals" on infant formula because the statement "[is] not even arguably misleading").

**"With Nutrients for Immune System Support":** Abbott's statement "With Nutrients for Immune System Support" is likewise true. Bates does not deny that Ensure contains nutrients supporting consumers' immune systems, including Zinc, Protein, and Vitamins A and D. Instead, she falls back on her allegation that Ensure is generally unhealthy because it purportedly contains too much sugar. *See* A9–10. But even assuming that Ensure contains "excess" sugar, "large amounts of sugar" or allegedly "empty calories," that "do[es] not necessarily prevent the shakes from providing vitamins and minerals" for immune support. *See Morris v. Walmart Inc.*, 2020 WL 5645812, at *5 (N.D. Ala. Sept. 22, 2020); *Kennedy v. Mondelēz Glob. LLC*, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) (dismissing New York GBL claims because, in part, "the grahams are 'made with real honey' is a factually

26

true statement about the product"). That is fatal under New York law, and the district court's decision holding as much should be affirmed. *See* A168.

**"Discover More at Ensure.com," "Learn About Ensure Complete Nutrition and Benefits," and "Chat Live with a Registered Dietician About Nutrition":** Bates's claims predicated on statements pointing consumers to resources to learn more information about Ensure fare no better. The district court analyzed these statements together and found that Bates "does not allege that the statements do not direct a consumer to sources of information." A169. Indeed, none of those statements—"Discover More at Ensure.com," "Learn About Ensure Complete Nutrition and Benefits," or "Chat with a Registered Dietician About Nutrition"—are false. None even describes the product; rather, each provides instructions for how customers can learn more about Ensure. Bates alleges in her Complaint, without explanation, that these statements somehow convey that Ensure products are "beneficial to health generally." A9. But, as the district court correctly noted, directing a consumer to more sources of information "does not represent any claim about the benefits of that product," and Bates does not allege that the statements fail to actually lead a consumer to other information sources. *See* A169. Thus, "[e]ven when read in context, the claims do not represent a materially misleading statement about the health benefits of the products." A169.

27

Bates appears to concede that these statements are each factually true but argues they are nonetheless "*potentially* misleading." Bates Br. at 24–25 (emphasis added). But a plaintiff must do more than allege that a "label might *conceivably* be misunderstood by some few consumers." *Jessani*, 744 F. App'x at 19 (emphasis added) (citation and quotation omitted). Instead, a plaintiff like Bates "must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. Regardless, Bates never contends with the reality that, for example, Ensure's status as the "#1 Doctor Recommended Brand" is entirely consistent with the fact that Ensure *can* be used to promote healthy dietary practices, regardless of its sugar content; and that Ensure *does* provide nutrients to support immune health. Bates does not allege, for example, that Ensure is unhealthy for all consumers to drink, regardless of their individualized health needs. As such, she reads far more into these statements than they can bear (*e.g.*, that Ensure meets any particular organization's recommended sugar levels). Bates's strained and self-serving argument that these undisputedly true statements could *conceivably* be

misunderstood by a few customers is insufficient to support a plausible false labeling claim under New York law, and this Court should affirm.[6]

### 2. Puffery.

The district court also correctly held that "statements that [Ensure] represent[s] 'complete' and 'advanced' nutrition are puffery that cannot be actionable under the relevant statutes." A170–71.[7] Under New York law, puffery includes "generalized or exaggerated statements which a reasonable

---

[6] Again, Bates places great weight on *LeGrand*, the California district court case decided under California law. *See* Bates Br. at 24 (citing *LeGrand*, 655 F. Supp. 3d at 891). *LeGrand* found that these factually true statements nonetheless created "a false impression of health when read in the context of the packaging" and thus were "potentially misleading." 655 F. Supp. 3d at 892–93. But *LeGrand* got it wrong. By simply accepting plaintiff's definition of "healthy" as related solely to the sugar content without probing whether plaintiff's definition was ***plausible***, the *LeGrand* court jumped to the conclusion that any suggestion of health benefits from consuming Ensure was misleading, ignoring the undisputed fact that Ensure does include vitamins and minerals to support nutrition. Nowhere did *LeGrand* explain why Ensure could ***not*** be ***part of*** a healthy diet, even with its sugar content. Even more fundamentally, *LeGrand* did not explain how true statements like "Chat Live with a Registered Dietitian about Nutrition" could mislead consumers as to Ensure's sugar content.

[7] This holding applies to at least the following statements: (1) "Complete Balanced Nutrition"; (2) "Complete, Balanced Nutrition® – for everyday health"; (3) "Complete, Balanced Nutrition—For—… Heart…Immune"; (4) "Complete is Ensure's most advanced, Complete, Balanced Nutrition shake"; (5) "Complete, Balanced Meal Replacement"; (6) "Advanced Nutrition Shake"; and (7) "most advanced nutritional product." *See* A169–70. In addition, the district court found the following statements to constitute puffery: (1) "Most advanced nutritional product," (2) "designed to help rebuild your strength and energy from the inside, with an All-in-One blend to support your health," and (3) "Recommend[s] 2 bottles per day as part of a healthy diet." *See* A170–71.

consumer would not interpret as a factual claim upon which he could rely," as well as "subjective claim[s] about a product that cannot be proven either true or false." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153–54 (S.D.N.Y. 2022); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159–60 (2d Cir. 2007) (applying same definitions of puffery in Lanham Act context); *Bader v. Siegel*, 238 A.D.2d 272, 272 (N.Y. App. Div. 1997) (defining "puffery" as statements "incapable of being proved true or false"). Statements of puffery are not actionable. *Lacoff v. Buena Vista Publ'g, Inc.*, 183 Misc.2d 600, 610 (N.Y. 2000).

Statements that Ensure provides "complete" or "advanced" nutrition—such as "Most advanced nutritional product"—are textbook examples of puffery. These "subjective, non-specific, unmeasurable, and vague statement[s]" do not convey precise representations to the customer, but instead are reasonably understood as Abbott's "opinion" about the benefits of Ensure. *Dwyer*, 598 F. Supp. 3d at 154. As the district court put it in sustaining Abbott's challenge to these statements, these statements "are not simple statements of fact which can be shown to be true or false but, instead, represent claims about the relative value of the product which are broad and commendatory; 'complete' or 'advanced' is a statement of value more than a statement of fact, and parties can debate what would constitute 'complete' or 'advanced' nutrition in any product." A170.

Indeed, courts commonly hold that terms like "complete" and "advanced" are puffery; so too with statements like "nutritious," "superior," "premium," and similar subjective, non-quantifiable, non-disprovable descriptors. *See, e.g.*, *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 63 (2d Cir. 2022) (holding statement that website provides "a complete understanding of relevant material" was non-actionable puffery). For example, in *Blue Buffalo Co. Ltd. v. Nestlé Purina Petcare Co.*, a federal court applying New York law rejected a nearly identical challenge to Bates's here, holding that "100% Complete & Balanced Nutrition" was puffery—even where, unlike the challenged statements here, the statement included a "potentially quantifiable metric of '100%.'" 2015 WL 3645262, at *10 (E.D. Mo. June 10, 2015). The district court's parallel finding here is consistent with this wide-ranging precedent holding similar "complete" and "advanced" labeling statements to be nonactionable puffery. *See In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563, at *11 (E.D.N.Y. Sept. 29, 2023) (holding that statement "proprietary advanced technologies" was puffery because "[a]djectives like 'superior' and 'advanced' are broad statements of optimism"); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("[A]dvertising terms like 'complete' are puffery because they are subjective and cannot be proven true or false.").

31

Bates counters by repeating her claim that these statements create the impression that Ensure is "healthy, balanced food." *See* Bates Br. at 30. But whether or not something is healthy, nutritious, or balanced depends upon the health and dietary needs of the particular consumer and is not something that can be objectively proven or falsified in the abstract. *Blue Buffalo*, 2015 WL 3645262, at *10 ("[W]hether something is complete or balanced nutrition is merely an opinion about quality and is not capable of being proven true or false.").

Bates also wrongly contends that Abbott's puffery defense is fact-intensive and cannot be decided at the pleadings stage. Her argument rests on two cases: *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89 (2d Cir. 2023) and *International Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46 (2d Cir. 2022). The district court's dismissal, though, is fully in line with both cases.

In *MacNaughton*, this Court explained that puffery comes in two forms: (1) "subjective statements of opinion which cannot be proven false," and (2) "'exaggerated, blustering, and boasting statement[s]' that are objective—and therefore technically provable—but 'upon which no reasonable buyer would be justified in relying.'" 67 F.4th at 96–97 (quoting *DIRECTV*, 497 F.3d at 160). While the latter category usually cannot be resolved on the pleadings due to the "fact-intensive inquiry" required, the former category ***can*** be resolved on the pleadings. *Id*. Because the challenged statements regarding Ensure's ability to

32

provide "advanced" or "complete" nutrition are "subjective statements of opinion which cannot be proven false," these statements are "non-actionable puffery as a matter of law" and were correctly dismissed under *MacNaughton*. *Id*.

Likewise, in *International Code Council*, this Court noted that "subjective statements of [] opinion" can be dismissed on the pleadings, while objective "exaggerated, blustering, and boasting statement[s]" typically require more factual development. 43 F.4th at 62–63. The facts of *International Code Council* further suggest that Bates's claims here should be dismissed on the pleadings. That case considered statements from a website provider that its website provided "a complete understanding of relevant material." *Id*. This Court held that such claims of "completeness" were non-actionable puffery because "[w]hether users could glean a 'complete understanding of relevant material' from [defendant]'s website is immeasurable and subjective." *Id*. Rather, whether an individual user could gain a truly complete understanding based on using the subject website would "depend[] on the cognitive abilities of the user and the nature of the project"—just like whether a consumer can truly gain "complete" nutrition from Ensure products depends on the particular nutritional needs of the consumer. *Id*. Accordingly, this Court

affirmed dismissal of false advertising claims based on these "completeness" statements. It should reach the same conclusion here.[8]

## B. The Court Should Affirm Dismissal of Nutrient Content Claims as Expressly Preempted.

The district court also correctly dismissed several of Bates's claims because several challenged statements are implied nutrient content claims regulated by the Federal Food, Drug, and Cosmetic Act ("FDCA"). Under well-established principles of express preemption, the district court's decision should be affirmed.[9]

---

[8] Bates's refrain to cite *LeGrand* (which found that it could not decide the puffery question on the pleadings) is again unavailing, as that case did not address the many cases—including this Court's decisions in *MacNaughton* and *International Code Council* and other New York district court cases applying those decisions—holding that subjective statements of opinion about a product's superiority are appropriate for resolution on the pleadings. Indeed, other than *MacNaughton* and *International Code Council*, Bates cites no cases from the Second Circuit or its district courts rejecting similar puffery defenses at the pleadings stage. And even Bates's own out-of-circuit cases do not provide as much help as she claims. *E.g.*, *Hadley*, 273 F. Supp. 3d at 1082–90 (finding several statements "impl[ying] that the product is healthy"—including "unbelievably nutritious," "positively nutritious," "good decision," "great start," "eat better," and "[b]reakfast [b]rainpower"—to be nonactionable puffery).

[9] Specifically, the claims dismissed on this basis are "Complete," "Complete, Balanced Meal Replacement," "Immune," "Digestion," and "Heart" on the Ensure Complete Nutrition Shake label; "All in One . . . Heart[,] Immune[, and] Digestion" on the Ensure Enlive Advanced Nutrition Shake label; "Therapeutic nutrition shake" and "Complete, Balanced Nutrition" on the Ensure Compact Therapeutic Nutrition Shake label; "Nutrition Drink" on the Ensure Clear Nutrition Drink label; and "nutrition powder" on the Ensure Original Nutrition Powder label.

The Supremacy Clause requires that "federal law preempts contrary state law." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 162 (2016). Federal preemption of state law can be express or implied. This case involves express preemption, which arises "when 'a federal statute expressly directs that state law be ousted.'" *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008).

As pertinent here, the FDCA expressly prohibits states from "directly or indirectly" establishing any requirements respecting claims "made in the label or labeling of the food which expressly or by implication . . . characterize[]" the level of nutrients in a food, unless that requirement is "identical" to the requirements imposed by the FDCA. 21 U.S.C. § 343-1(a) (preemption clause); 21 U.S.C. § 343(r) (nutrient claims). Nutrient content claims can be either direct or indirect. Under federal regulations, implied nutrient content claims are statements that either (i) describe the product or an ingredient in that product in a manner that suggests that a nutrient is absent or present in a certain amount or (ii) suggest that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and are made in association with an explicit claim or statement about a nutrient. 21 C.F.R. § 101.13(b)(2).

Under the FDCA's express preemption clause, any state law challenges that would impose requirements on implied nutrient content claims that are not "identical" to the requirements imposed by federal law are preempted. *See Critcher*

*v. L'Oreal USA, Inc.*, 959 F.3d 31, 35–37 (2d Cir. 2020) (noting that 21 U.S.C. § 343-1 "blocks state-law claims unless the requirements of the state law are 'identical' to those that federal law imposes"); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008); *see also Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433, 434 (2d Cir. 2015) (summary order). As Bates appears to concede on appeal, state-law false labeling claims (such as those brought under NY GBL §§ 349 and 350) challenging implied nutrient content claims are preempted. *See* Bates Br. at 44–46; *see also* A176–79. That is because state-law false labeling claims would impose requirements "not identical to" the requirements imposed by federal law. 21 U.S.C. § 343-1(a)(5).[10]

Several of Bates's challenged statements qualify as implied nutrient content claims because each statement either (i) describes Ensure "or an ingredient therein

---

[10] Bates cites several cases that involve different varieties of implied—not express—preemption in arguing that there is a policy disfavoring preemption. *See e.g.*, Bates Br. at 44, 51 (citing *Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 116–18 (2d Cir. 2018) (conflict preemption); *N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 850 F.3d 79, 86–87 (2d Cir. 2017) (obstacle preemption); *WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 500–01 (S.D.N.Y. 2011) (implied preemption)). But in the express preemption context, unlike in the implied preemption context, there is no "presumption against pre-emption." *See Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)). Bates's reliance on implied and obstacle preemption cases is therefore misplaced. Bates is doubly wrong to cite a case that has nothing to do with preemption at all. *See A.S. Goldmen & Co., Inc. v. Avitar, Inc.*, 1998 WL 856112, at *3 (S.D.N.Y. Dec. 10, 1998) (discussing affirmative defense of "illegality").

in a manner that suggests that a nutrient is absent or present in a certain amount" or (ii) suggests that Ensure, "because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient." 21 C.F.R. § 101.13(b)(2); *Critcher*, 959 F.3d at 35–37. Bates's state-law challenge to these statements is therefore preempted, as the district court correctly held.

**"Complete," "Complete, Balanced Meal Replacement," "Immune," "Digestion," "Heart" on Ensure Complete:** The district court correctly held that these statements are preempted implied nutrient content claims. A177–78. These statements feature prominently on Ensure Complete's label in a chart that identifies various nutrients in the product (*e.g.*, "Excellent Source of Zinc, Vitamin A, and Antioxidants Vitamins C, E, and Selenium") and provides additional statements about benefits associated with those nutrients (*e.g.*, "Immune"):



A87 (rotated; emphasis added).

Bates now appears to concede that the "Immune," "Digestion," and "Heart" statements "may be made in connection with nutrient content claims" and, thus, are "unchallenged" on appeal. Bates Br. at 53. Nonetheless, she tries to gerrymander the label by arguing that the statement "Complete, Balanced Meal Replacement" atop the nutrient chart is not made in direct connection with the nutrients listed beneath it but rather "refers more broadly to the product as a whole." Bates Br. at 53. But Bates nowhere explains how, particularly if the "Immune," "Digestion," and "Heart" statements are made in connection with nutrient content claims as she now concedes, the "Complete, Balanced Meal Replacement" header that borders those

statements is not. The district court's finding that Bates's claims based on "Complete, Balanced Meal Replacement" are preempted should be affirmed.

**"All In One … Heart[,] Immune[, and] Digestion" on Ensure Enlive:** These statements are made alongside statements about the product's nutrient content: specifically, "20g Protein" and "26 Vitamins & Minerals." *See* A89. In addition, the statements "Heart," "Immune," and "Digestion" appear right beside the nutrients that provide benefits related to each:



A89 (emphasis added). Accordingly, the district court correctly found "All In One … Heart[,] Immune[, and] Digestion" to be an implied nutrient content claim and, therefore, preempted. A178.

Bates counters that "there is nothing in the record" to suggest that "20g Protein" is helpful in maintaining healthy dietary practices. But she also never

alleges that "20g Protein" is false or misleading—or that it is somehow harmful to health. Of course, it is well known that protein is an important nutrient for a healthy diet, and courts are not barred from using experience and common sense to assess complaint allegations. *Iqbal*, 556 U.S. at 664. Bates's additional argument—that "All in One" "refers to the product as a whole," *see* Bates Br. at 54—fails for the reasons outlined above. The "All in One" statement is directly adjacent to the statements "Heart," "Immune," and "Digestion," which, in turn, the label clearly associates with specific nutrients. *See* A66. As the district court explained, "the statements concerning the 'all in one' nature of the product are placed in a way that connects them directly to the explicit claims about nutrients, and those claims are preempted." A178. This holding should be affirmed.

**"Nutrition" Drinks, Shakes, Powders on Ensure Compact, Ensure Clear, and Ensure Original Powder:** These products include various descriptors like "nutrition" drinks, shakes, or powders, along with listings of specific amounts of nutrients. The district court correctly found that all of these statements are implied nutrient content claims because the "words are directly above explicit listings of such nutrients," such that they "clearly imply" a relation between the listed nutrients and the "nutrition" label. A178.

For Ensure Compact, for instance, the statement "therapeutic nutrition shake" on the multi-pack is made in connection with descriptions of the product's nutrient content, including "9g Protein" and "25 Vitamins & Minerals":[11]



A66 (emphasis added).

Likewise, for Ensure Clear, the statement "nutrition drink" is included with descriptions of this product's nutrient content: "8g Protein," "180 Calories," and "0g Fat":

---

[11] As to the phrase "Complete, Balanced Nutrition," the district court observed that it could not find that phrase on the product label and did not make any conclusions based on that statement. A178–77.



A67 (emphasis added).

And for Ensure Original Powder, the description of the product as a "nutrition powder" is made with a description of the product's nutrients—notably, "9g Protein" and "25 Vitamins & Minerals":



A67 (emphasis added).

As the district court correctly held, all of these statements are implied nutrient content claims because they are made in connection with representations about the nutrient content of the product, which Bates herself alleges suggest something about Ensure's health value.  *See* Bates Br. at 53.  As the district court put it, "the context implies that the reason the drink is a nutrition drink is that it contains the nutrients and calories listed directly below that phrase on the bottle."  A179.  As such, these are all implied nutrient content claims, and any challenges to them brought under state law (such as the NY GBL) are preempted.

Bates's various arguments as to why these statements are not implied nutrient content claims all fall flat.  *See* Bates Br. at 46–55.

***First***, Bates argues that many of the challenged statements cannot be implied nutrient content claims because they are not located close enough to nutrient statements on the labels at issue.  For example, Bates says that "Complete, Balanced Meal Replacement" on Ensure Complete is "not made in direct connection with" the nutrient content claims on the label.  Bates Br. at 53.  Likewise, Bates argues that because "Complete, Balanced Nutrition" is "on the outer packaging" and is in "a smaller font, with a different background color," it cannot be considered an implied nutrient content claim.  Bates Br. at 54.  But the notion that such statements are too "offset" from the surrounding nutrient statements conflicts with Bates's own caselaw, which stresses the importance of "context" but cautions that the "'magic

words' . . . do not 'need to be directly adjacent to the discussion of a nutrient to create an implied nutrient content claim.'" *Krommenhock*, 334 F.R.D. at 571. This Court should affirm the district court, which correctly reasoned that based on the "context of where the labeling is placed and the other parts of the labeling to which [the] term is connected," the relevant challenged statements are implied nutrient content claims. A177–78.

***Second***, Bates argues that certain statements—including "nutrition shake," "complete," "therapeutic nutrition shake," "nutrition drink," and "nutrition powder"—are "statements of identity" rather than implied nutrient content claims. Bates Br. at 49. But even if these statements are, in fact, "statements of identity," Bates's claims based on them would still be preempted. That is because statements of identity are also heavily regulated under federal law—as Bates's brief demonstrates. *See* Bates Br. at 49–50 ("These statements . . . are the products' statements of identity, ***and their size and placement is governed by regulation***." (emphasis added)). Where federal requirements address the subject, any state law claims challenging the same subject matter are preempted to the extent they do not impose identical requirements. *In re PepsiCo*, 588 F. Supp. 2d at 538 (applying 21 U.S.C. § 343-1(a) to hold that state law claims challenging water labels were preempted).

***Third***, Bates attempts to avoid preemption of its challenge to the statement "With Nutrients for Immune System Support" by arguing it is a "structure/function claim," not an implied nutrient content claim. Bates Br. at 47. But Abbott did not argue that that statement is an implied nutrient content claim and therefore subject to preemption. Instead, Abbott has consistently defended that statement as a ***true*** statement, and the district court dismissed Bates's challenge to this statement on the ground that it was factually true. *See* A168. By discussing this statement in the context of preemption, Bates attacks a straw man.

***Finally***, Bates attacks another straw man by arguing that all statements including the term "health" or "healthy" cannot be nutrient content claims. Bates Br. at 52. But again, Abbott did not argue that such terms are nutrient content claims and did not move before the district court on that basis. *See* A65. Abbott does not change its position before this Court.

The district court's dismissal of claims based on each of these preempted challenged statements should therefore be affirmed.

## CONCLUSION

For the reasons set forth above, this Court should affirm the judgment of the district court in full.

45

Respectfully submitted,

*s/ Michael A. Glick*
Michael A. Glick
Conley K. Hurst
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 389-5000
michael.glick@kirkland.com
conley.hurst@kirkland.com

*Counsel for Defendant-Appellee*

July 15, 2024

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This brief complies with the type-volume limitation of Local R. 32.1(a)(4)(A) because it contains 10,014 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

July 15, 2024

*s/Michael A. Glick*
Michael A. Glick